Perfecto N. **SABA**, et al., Petitioners,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. C 98–3196 JL (PR).

United States District Court, N.D. California.

Feb. 8, 1999.

William R. Gardner, San Francisco, CA, for Petitioner.

Robert Yeargin, U.S. Attorney's Office, San Francisco, CA, for Respondent.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

LARSON, United States Magistrate Judge.

### INTRODUCTION

Perfecto Saba, his brother Samson, and their sisters Anita and Mariam ("Petitioners") filed a petition for a writ of habeas corpus and an application for stay of deportation. All parties consented in writing to the jurisdiction of the magistrate judge to whom the case was assigned. The matter was heard by this court on November 18, 1998. William Gardner appeared on behalf of Petitioners. Robert Yeargin, Special Assistant United States Attorney, appeared on behalf of Respondent.

After considering the briefing and arguments of counsel and the record in this case,

IT IS HEREBY ORDERED that this court vacates the order of deportation and remands this case to the immigration court to re-open proceedings and to evaluate

Petitioners' eligibility for adjustment of status.

### FACTUAL AND PROCEDURAL BACKGROUND

The Saba family has had an eventful journey on the road to a better life. The mother and father, Anh–Tuyet and Protacio, fled Vietnam with their oldest child, Regina,[1] and emigrated to the Philippines, where two more children, Anita and Perfecto, were born. Presumably in search of work, the family ventured to Saudi Arabia, where two more children, Samson and Mariam, were born. Mr. and Mrs. Saba arrived in the United States in 1986. The five Saba children stayed in the Phillippines when their parents first came to the United States.[2] The oldest sibling, Regina, now 27 years old, took care of the four younger children, who are the Petitioners in this proceeding, while the parents were away.

On April 9, 1991, the children entered the United States on six-month visitors' visas. They were to depart by October 8, 1991.

On October 4, 1991, Petitioners applied for political asylum.

On May 14, 1993, the Immigration and Naturalization Service ("INS") denied the application for political asylum because the Petitioners could not establish either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, as required by 8 U.S.C. § 1158.[3]

On June 4, 1993, the INS initiated deportation proceedings.

On November 3, 1993, Petitioners renewed their asylum application.

---

1. Regina Saba is not a party to this petition.

2. The birth dates and birthplaces of the children are: Regina—3–19–71, Vietnam; Anita—8–4–76, Philippines; Perfecto—9–10–78, Philippines; Samson—6–26–81, Saudi Arabia; Mariam—12–22–83, Saudi Arabia.

3. As an example of the potential dangers suffered by the children in the Philippines, Petitioners assert that the communist insurgent New Peoples Army ("NPA") occupied the Saba home and raped Regina during this time. In fact, subsequent psychiatric records of her treatment in the United States indicate that her psychiatric problems were attributed to her having been molested by a great uncle when she was six years old.

On September 25, 1995, they withdrew their asylum application in open court. The Immigration Judge ("IJ"), the Hon. Bette Kane Stockton, ordered Petitioners to depart voluntarily by September 6, 1996. The order of voluntary departure would automatically convert to an order of deportation if Petitioners did not depart by the specified date. Mrs. Saba signed the voluntary departure form. Counsel was present at this proceeding.

On June 18, 1996, Mrs. Saba became a naturalized citizen. No action was taken at this time to adjust the status of the children.

On September 6, 1996, the last day for voluntary departure, Petitioners belatedly moved, through counsel, to re-open deportation proceedings to apply for adjustment of status to that of lawful permanent residents under § 245 of the Immigration & Nationality Act. They also requested an extension of time to depart voluntarily. The extension request was denied.

On October 22, 1996, the IJ granted the motion to re-open the deportation proceedings, stating that it was "clear that the oral and written advisal pursuant to § 242B(e)(1) [was] not present in any of these four cases. [Petitioners] were granted voluntary departure without being advised of the legal consequences of their failure to depart."

On November 16, 1996, however, the IJ vacated the October 22 order and entered a new order denying the motion to re-open deportation proceedings,[4] stating that she had erred in the initial order by inadvertently failing to notice the written advisal of the consequences of the failure to depart with the signature of Mrs. Saba on the reverse of the form.[5]

On January 15, 1997, the last day to file an appeal to the Board of Immigration

Appeals ("BIA"), Petitioners appealed the IJ's decision to the Board. The notice of appeal was signed by Miguel Gadda, one of Petitioners' attorneys.

On January 22, 1997, the Board rejected the appeal because it was not accompanied by either the $110.00 fee or a Fee Waiver form.

On January 31, 1997, Petitioners' counsel resubmitted the appeal with the fee.

On November 25, 1997, Mr. Saba also became a naturalized citizen.

On January 23, 1998, the BIA dismissed the appeal as untimely because a completed appeal had been due on or before January 15, 1997, but was not correctly filed until January 31, 1997. The IJ's order of December 16, 1996 became final at this time.

On April 9, 1998, Petitioners were ordered to leave the country on May 4, 1998.

On April 29, 1998, Petitioners requested a stay of deportation until November 3, 1998, on the basis that they would miss more than a year of school if they were deported to the Phillippines.

A stay was granted until August 1, 1998. The four young Petitioners signed a statement to the effect that the stay was granted to permit them to finish the school year and that they would depart the United States before the stay expired. Their parents signed a statement that they understood that their children must leave the United States and would make arrangements for the children's travel.

Petitioners did not leave the U.S. on August 1, 1998.

On August 18, 1998, through counsel, they filed a petition in U.S. District Court for a writ of habeas corpus and a stay of deportation.[6]

---

4. She based her decision on Matter of Shaar, Int. Dec. 3290 (BIA 1996).

5. At the time Mrs. Saba signed the advisal, all four petitioners were under the age of 21 and considered minors by Immigration definition. 8 U.S.C. § 1101(a)(1)(A).

6. Petitioners also submitted a letter from Mr. Saba's sister, who indicated that she and her family are not in a financial position to assist the Saba children if they return to the Phillippines. Drinkable water is unavailable and violent crimes are pervasive in the area where the Sabas used to live.

On August 24, 1998, Petitioners were ordered to surrender for deportation on September 21, 1998. They did not.

On September 24, 1998, this court issued an order to show cause and stay of deportation to permit hearing of the petition.

Throughout the Immigration proceedings Miguel D. Gadda and his associate, William R. Gardner, represented the Petitioners. William Gardner prepared and argued the habeas petition and motion for stay of deportation.

I. *After The Enactment Of AEDPA And IIRIRA, Does This District Court Have Jurisdiction To Hear Petitioners' Habeas Corpus Petition?*

In 1996, Congress twice significantly revised the Immigration and Nationality Act's ("INA") judicial review provisions, first through the Antiterrorism and Effective Death Penalty Act ("AEDPA"), enacted April 24, 1996, and again through the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which was enacted in September 1996, and which took final effect on April 1, 1997. The pertinent provision, entitled "Exclusive Jurisdiction," states:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under [the INA].

INA § 242(g) (emphasis added); 8 U.S.C. § 1252(g).

Interpreting 8 U.S.C. § 1252(g), the U.S. Court of Appeals for the Ninth Circuit has held that district courts do not have jurisdiction to hear claims by aliens involving orders of deportation or removal. *Hose v. INS*, 141 F.3d 932, 935 (9th Cir. 1998). Only a court of appeals may review final orders of removal, pursuant to the exception in § 1252. 141 F.3d at 935. *See also Arrozal v. Immigration and Naturalization Service*, 159 F.3d 429 (9th Cir.

1998) (BIA's denial of motion to reopen subject to jurisdiction of court of appeals.) District courts are not included in the exception and are divested of jurisdiction to hear appeals from BIA decisions.

In *Hose* the petitioner attempted to enter the United States at the Honolulu Airport. An INS officer approved her visa on the basis of her apparent marriage to a United States citizen and allowed her to proceed to the Customs area. While she was there, an INS officer questioned the petitioner's brother. The officer began to suspect that petitioner's marriage was a sham when he discovered that petitioner's brother was married to petitioner's mother-in-law. Believing that petitioner had entered into a fraudulent marriage to gain entry to the U.S., the officer brought her back to the INS area, canceled her visa and designated her for exclusion proceedings. Petitioner was later charged with attempting to enter the United States without a valid visa. Petitioner appealed the order of exclusion to the BIA but failed to seek judicial review in the court of appeals. Instead, she filed a habeas petition in the district court, but the district court dismissed her case for lack of subject matter jurisdiction due to the newly enacted Congressional statutes. The petitioner in *Hose* appealed the dismissal, and the court of appeals affirmed, holding that § 242(g) divested the district courts of jurisdiction to hear *any* claim by any alien involving an immigration order. 141 F.3d at 935. This includes habeas corpus review under 8 U.S.C. § 2241. *Id.* at 936. However, the court of appeals may consider a timely petition for review. *Ibid.*

Under 28 U.S.C. § 2241, writs of habeas corpus may otherwise be granted by the district courts if the petitioner is in "custody in violation of the Constitution or laws or treaties of the United States." In the case at bar, Petitioners failed to appear for deportation. Respondent's Return alleges that the Petitioners are thus putative fugitives. The court of appeals has previously held that escape from federal custody dis-

qualifies a petitioner from seeking legal remedies, *see Katz v. United States*, 920 F.2d 610, 612 (9th Cir.1990); *Hussein v. INS*, 817 F.2d 63 (9th Cir.1986). In a more recent decision the court has found that failure to report for deportation does not necessarily make an alien a fugitive ineligible for judicial remedies. *Arrozal*, 159 F.3d at 432.

While the court in *Hose* stated that Congress divested the district court of jurisdiction to hear immigration cases, including habeas corpus petitions under 8 U.S.C. § 2241, it left unanswered the question whether § 242(g) is unconstitutional as to aliens who otherwise have no avenue of judicial review. 141 F.3d at 936 n. 3.

The court answered this question in *Magana–Pizano v. INS*, 152 F.3d 1213 (9th Cir.1998). In that case petitioner was a non-citizen convicted criminal who was precluded by AEDPA from receiving either a waiver of deportation or judicial review of his order of deportation. He had been convicted in state court of being under the influence of cocaine and methamphetamine. The immigration judge ordered him deported. *Id.* at 1214–15.

On a petition for review, the court of appeals found that "elimination of all judicial review of executive detention violates the Constitution."[7] *Id.* at 1220. The court narrowly construed its prior decision in *Hose*, finding that the petitioner in that case had another avenue of judicial review. In *Magana–Pizano*, the transitional rule of AEDPA also precluded the court of appeals from hearing the case. Furthermore, the court noted, the BIA lacks jurisdiction to adjudicate constitutional issues, citing *Wang Zong Xiao v. Reno*, 81 F.3d 808, 814 (9th Cir.1996) and *Bagues–Valles v. INS*, 779 F.2d 483, 484 (9th Cir.1985). *Magana–Pizano* at 1221.

The court emphasized that "*Hose* was decided in the context of an appeal of a discretionary administrative decision for which alternative judicial remedies existed. *Magana–Pizano*'s habeas corpus petition arises under polar opposite conditions: he has raised colorable constitutional issues concerning his proposed deportation, but has no judicial remedy save habeas corpus relief. . . ." 152 F.3d at 1217. Therefore, if habeas corpus review were unavailable to Magana–Pizano, he would have no other avenue to raise his constitutional claim.

Significantly, in *Magana–Pizano* the court also expressly rejected the proposition that habeas corpus review is limited to situations in which there is a threat of a "fundamental miscarriage of justice." *Id.* at 1221. Various district courts had previously held that relief under § 2241 is restricted to instances in which a petitioner "can identify a grave constitutional error or a fundamental miscarriage of justice in [the] deportation proceedings." *Moore v. INS*, 956 F.Supp. 878, 883 (D.Neb.1997), *quoting Powell v. Jennifer*, 937 F.Supp. 1245, 1252–53 (E.D.Mich.1996); *Duldulao v. Reno*, 958 F.Supp. 476, 480 (D.Haw. 1997); *Mbiya v. INS*, 930 F.Supp. 609, 612 (N.D.Ga.1996).

The court in *Magana–Pizano* stated that no such limitations appear in 28 U.S.C. § 2241, and it declined to so interpret the statute.

> The plain language of 28 U.S.C. § 2241 provides an unambiguous grant of jurisdiction to the district courts. . . . Moreover, it is appropriate that any evidentiary hearings with respect to habeas matters take place at the district court level which is uniquely positioned to handle such issues and develop the appropriate record. . . . Congress vested the district courts with the power to review habeas corpus petitions. It is not only a proper choice, but one which we lack the power to judicially divest.

152 F.3d at 1221 (internal quotations omitted).

---

7. Specifically, it would violate the Suspension Clause of the United States Constitution. The Suspension Clause provides that: "The Privilege of the Writ of Habeas Corpus shall not be suspended unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I, § 9, cl. 2.

■ Thus, district courts in this circuit retain § 2241 habeas corpus jurisdiction in deportation cases if the petitioner has no other avenue of judicial review. Furthermore, the petitioner need not make a showing that there was a "grave constitutional error or a fundamental miscarriage of justice" in the deportation proceedings in order to be heard.

■ In the case at bar, Petitioners have filed a petition for habeas corpus, seeking relief from an order of deportation. Petitioners have no other avenue of judicial review because their attorneys failed properly to file their BIA appeal, failed to seek redress in the court of appeals, and failed to petition for adjustment of status, immediately after Petitioners' mother became a naturalized U.S. citizen. These failures could reasonably be considered to be the result of ineffective assistance of counsel, which is an error of constitutional dimensions. Petitioners are precluded from appealing the BIA decision or the deportation order before the court of appeals,[8] and are foreclosed by statute from seeking certain other forms of relief, including adjustment of status.

Their case differs substantially from *Hose*. The petitioner in *Hose* did not have the same potential constitutional claim as the Petitioners herein. Hose was not prejudiced by ineffective assistance of counsel. Therefore, the holding in that case is not controlling in the case at bar. In that case the petitioner was attempting to enter the United States with a visa issued on the basis of a fraudulent marriage. She did not reside in the United States even for one day. In the case at bar, the Petitioners are children who have lived in this country for more than seven years. They attend high school and college here. Both parents now are citizens of the United States. But for ineffective assistance of counsel, discussed below, these children would probably have been allowed to reside permanently here in the United States with their parents.[9]

## II. *Should This Court Raise, Sua Sponte, An Ineffective Assistance Of Counsel Claim On Behalf Of Petitioners?*

■ The court of appeals has stated that "This court will review ineffective assistance claims on direct appeal only if 'the defendant's legal representation was so inadequate as obviously to deny him his sixth amendment right to counsel' and 'the trial court's failure to take notice sua sponte of the problem' amounted to plain error." Laughlin, 933 F.2d at 789 n. 1 (quoting *United States v. Wagner*, 834 F.2d 1474, 1482 (9th Cir.1987).)

*Laughlin*, indeed, virtually every case which this court has found which deals with a trial or appellate court's raising the issue of ineffective assistance, was premised on a Sixth Amendment violation arising from a criminal prosecution. The importance attached to a Sixth Amendment violation is premised on the liberty interest at stake in a criminal proceeding. Deportation also threatens a liberty interest. The Supreme Court has said, "A deportation hearing involves issues basic to human liberty and happiness and, in the present upheavals in lands to which aliens may be returned, perhaps to life itself." *Wong Yang Sung v. McGrath*, 339 U.S. 33, 50, 70 S.Ct. 445, 94 L.Ed. 616 (1950).

This liberty interest has not been extinguished by legislation. The court of appeals has held that "[a]liens who have resided for more than a decade in this country, even those whose status is now unlawful because of technical visa violations, have a strong liberty interest in remaining in their homes." *American–Arab Anti–Discrimination Committee v. Reno*

---

8. The BIA's decision must be appealed to the court of appeals within 30 days. 8 U.S.C. §§ 1252(b)(1) & (2).

9. At the hearing before this court, Assistant U.S. Attorney Yeargin conceded that had the application procedure been adhered to, there would have been no problem in adjusting Petitioners' status to that of permanent U.S. residents.

*(American–Arab I)*, 70 F.3d 1045, 1067 (9th Cir.1995) (citing *Landon v. Plasencia*, 459 U.S. 21, 34, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982)), *aff'd after remand*, 119 F.3d 1367, 1376 (9th Cir.1997). In that case, the court also held that "[a]liens who reside in this country are entitled to full due process protections." *American–Arab I*, 70 F.3d at 1067 (citing *Plasencia*, 459 U.S. at 32, 103 S.Ct. 321); see also *Perez–Funez v. I.N.S.*, 619 F.Supp. 656, 660 (C.D.Cal.1985) ("the right to a deportation hearing and the various rights associated therewith constitute a substantial liberty interest on the part of the petitioners"); *Tefel v. Reno*, 972 F.Supp. 608, 616 (S.D.Fla.1997) ("[t]here are constitutionally-protected liberty interests at stake when an alien is threatened with deportation and liberty and property interests where the right to seek suspension is removed.") In one reported case in which the petitioner was represented by the same counsel on appeal as at trial, the appellate court raised the issue of ineffective assistance of trial counsel sua sponte, noting that counsel could not be expected to assert his own incompetence. *Smith v. State*, 650 P.2d 904, 908, n. 7 (Okl.Cr.1982).

In fact, because the same attorney represented Petitioners at the administrative immigration proceedings and on habeas corpus, it was unlikely that counsel would raise the ineffective assistance claim. Because of the substantial liberty interests at stake and the manifest importance of the result here, this Court is compelled to raise sua sponte the ineffective assistance of counsel claim on behalf of Petitioners. Indeed, this court has a duty to raise such a claim when the due process violation is so obvious

III. *May Petitioners Bring An Ineffective Assistance Of Counsel Claim Without Having Exhausted Administrative Remedies?*

■ Administrative remedies must be exhausted before raising claims of ineffective assistance of counsel where the claimants present mere isolated procedural de-

faults or omissions that the BIA "could have corrected" if "[g]iven the opportunity." Rashtabadi v. INS, 23 F.3d 1562, 1567 (9th Cir.1994) (requiring exhaustion where petitioner claimed that counsel admitted deportability without his consent and IJ failed to advise him of his rights before accepting the admission); *see also* Roque–Carranza v. INS, 778 F.2d 1373, 1374 (9th Cir.1985) (requiring exhaustion of a petitioner's ineffective assistance of counsel claim.where counsel failed to present evidence at asylum hearing and did not file a brief or request oral argument on BIA appeal.) Although the BIA "has no jurisdiction to decide questions of the constitutionality of the immigration laws[,] ... the BIA does have the authority to reopen cases to fix administratively correctable procedural errors, even when these errors are failures to follow due process." *Liu*, 55 F.3d at 426, citing *Rashtabadi*, 23 F.3d at 1567. (Petitioner's allegations of "due process violations," i.e., IJ's failure to advise him of his rights and attorney's failure to obtain consent to admitting deportability, were "exactly the sorts of procedural errors which require exhaustion".)

■ Due process claims such as the one in this case may be exempted from the exhaustion requirement if they involve more than a mere procedural error that the administrative tribunal can remedy. Bagues–Valles v. INS, 779 F.2d 483, 484 (9th Cir.1985) (exempting from an exhaustion requirement the petitioner's claim that the BIA's retroactive interpretation of continuous presence rule violated due process).

■ The case at bar involves a pattern of ineffective assistance of counsel extending beyond easily correctable procedural errors in the deportation hearing and is distinguishable from *Rashtabadi* and *Roque–Carranza*. For example, Petitioners' counsel failed to file the BIA appeal with the requisite fees (which resulted in dismissal of the appeal); counsel also failed to advise Petitioners to apply for adjustment of status to that of legal permanent U.S.

residents within a reasonable time after Mrs. Saba's naturalization; and further, counsel failed to appeal the removal order to the court of appeals within the allotted 30 days. These defects are more egregious that the mere procedural mistakes which the courts have found require exhaustion of administrative remedies.

In Wang v. Reno, 81 F.3d 808, 815 (9th Cir.1996), the court discussed other factors which support the conclusion that Petitioners' due process claim should be exempted from the exhaustion requirement. For example, Petitioners' claim rests on a constitutional violation, not on a defect in any statute or procedure. Therefore, Petitioners' "constitutional claim does not implicate the INA, and could not possibly involve review of the INS's exercise of its discretionary power." 81 F.3d at 814. Nor is exhaustion necessary in this case to protect "the twin purposes of protecting administrative agency authority and promoting judicial efficiency," because judicial review of Petitioner's due process claim would "neither forfeit[ ] the benefit of INS expertise nor deprive[ ] the INS of the opportunity to correct its own mistakes." *Id.* at 814–15. Finally, the issue of ineffective assistance of counsel neither requires complex interpretation of immigration laws nor suggests that the INS itself erred. For these additional reasons, exhaustion is not required in this instance.

IV. *Have Petitioners' Fifth Amendment Due Process Rights Been Violated By Ineffective Assistance Of Counsel?*

■ "Ineffective assistance of counsel in a·deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reason-ably presenting his case." Lopez v. INS, 775 F.2d 1015, 1017 (9th Cir.1985). To prevail, "one must show that [he or she] was prejudiced by [his or her] representative's performance." Mohsseni Behbahani v. INS, 796 F.2d 249, 251 (9th Cir.1986). A petitioner has been prejudiced if, but for counsel's ineffectiveness, the· outcome of the proceedings may have been different. Barraza Rivera v. INS, 913 F.2d 1443, 1448 (9th Cir.1990).

■ Petitioners have been represented by counsel since 1991. The record reflects that counsel was either Miguel D. Gadda or his associate, William R. Gardner.[10] Counsel made a number of serious errors during the course of representation of Petitioners:

First, at the deportation proceeding, Petitioners waived their right to an appeal and signed a voluntary departure form. Return, p. 11:13–16.

Second, Petitioners, instead of voluntarily departing and thereby complying with the voluntary departure order, on September 6, 1996, moved to re-open the deportation·hearing and requested an extension of the voluntary departure period. At the hearing before this court on the habeas petition, counsel stated that filing a request for an extension and a motion to re-open deportation hearing automatically stayed any further proceedings. This is incorrect. When Petitioners failed to depart, the voluntary departure order converted to a deportation order, and ·Petitioners became subject to INA § 242B, which precluded them from many forms of relief, including an adjustment of status and stay of deportation.[11]

Third, when counsel ·filed an appeal with the BIA, the requisite $110 fee was not

---

10. Both practice law at the same address.

11. Section 242B(e)(2)(A) of the Immigration and Naturalization Act provides that any alien who is allowed to depart voluntarily and who remains in the United States after the scheduled date of departure, shall not be eligible for certain forms of relief, including suspension of deportation unless Petitioner can show an exceptional circumstance. 8 U.S.C. § 1252(b)(2)(A) "Exceptional circumstances" under section 242B(f)(2) refers to "exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien." INA § 242B(f)(2).

tendered. The notice of appeal was signed by counsel. The application was filed on the last day of the prescribed time limit. Without the required fee or a Fee Waiver Form, the notice of appeal was incomplete. The subsequent attempt to correct the problem was untimely. Accordingly, the appeal was dismissed.

Fourth, no petition for review was filed in the court of appeals. Instead, a petition for habeas corpus was filed with this Court, which otherwise might not have jurisdiction but for the constitutional claim of ineffective assistance of counsel. If counsel had been more diligent in staying abreast of the law, he would have filed an appeal to the court of appeals within the allotted 30 days.[12]

Fifth, Petitioners did not file for an adjustment of Petitioners' status within a reasonable time after Mrs. Saba became a naturalized citizen, which was three months before the last day to depart voluntarily. As immediate relatives of a citizen, Petitioners would have been given priority and their application expedited. Instead, the application was filed on the last day to depart, which caused Petitioners to disobey the voluntary departure order, which in turn led to the deportation order.

At the hearing before this court, Assistant U.S. Attorney Yeargin stated his opinion that there would have been no obstacle to adjusting the Petitioners' status to that of permanent U.S. residents if Petitioners' counsel had not made so many errors.

This pattern of incompetence by counsel violated Petitioners' due process rights under the Fifth Amendment. Petitioners were prejudiced by their representatives' performance. *Mohsseni Behbahani*, 796 F.2d at 251. But for counsels' ineffectiveness, the outcome of the proceedings would probably have been different: Petitioners would have become permanent U.S. residents.

---

12. The pattern of carelessness, missed deadlines and inaccuracy lead this Court to conclude that counsels' actions did not constitute

## CONCLUSION

This court raises, sua sponte, an issue of ineffective assistance of counsel on behalf of Petitioners. This court finds that Petitioners' counsel made an egregious series of errors going beyond mere procedural defects, thereby obviating the usual requirement of exhaustion of administrative remedies. Petitioners were gravely prejudiced by their representatives' performance. Accordingly, the court finds that Petitioners' Fifth Amendment right to due process has been violated. Had Petitioners received correct advice and assistance from counsel, they could have petitioned the immigration court for adjustment of their status to legal permanent residents, which would have been successful.

For the reasons stated above, this court vacates the order of deportation and remands the matter to the immigration court to re-open deportation proceedings and to evaluate Petitioners' eligibility for adjustment of status as immediate relatives of United States citizens.

invited error or a strategy of laying grounds for appeal.