Miguel **GADDA**, Esq., Petitioner–Appellant,

v.

John **ASHCROFT**, Attorney General, U.S. Attorney General; Board of Immigration Appeals; Edward G. Kandler; Immigration Court, San Francisco; Immigration and Naturalization Service, Respondents–Appellees.

In re Miguel Gadda, Esq., Admitted to the bar of the Ninth, Circuit: 23 April 1985, Respondent.

Nos. 02–15113, 02–80014.

United States Court of Appeals, Ninth Circuit.

Submitted and Filed April 1, 2004.*

Amended July 20, 2004.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Fed. R.App. P. 34(a)(2).

Miguel D. Gadda, Esq., San Francisco, CA, pro se, for the petitioner-appellant.

Jocelyn Burton, Esq. and Robert Yeargin, Esq., Assistant United States Attorneys, San Francisco, CA, and David J. Kline, Esq. and Hugh G. Mullane, Esq., United States Department of Justice, Washington, DC, for respondents-appellees John Ashcroft, United States Attorney General, and Board of Immigration Appeals.

Before BEEZER, THOMAS, and CLIFTON, Circuit Judges.

## ORDER

Pursuant to our April 1, 2004 order and opinion, Miguel Gadda, Esq., was disbarred from the practice of law before the United States Court of Appeals for the Ninth Circuit pursuant to Federal Rule of Appellate Procedure 46(b)(1)(A). Respondent Gadda has filed a motion to recall the mandate and amend the April 1, 2004 order and opinion.

The court on its own motion recalls the mandate. The April 1, 2004 order and opinion is amended as follows: The two paragraphs on slip op. 4046–47 that read:

Within 21 days of the filing date of this opinion, respondent shall file notices of withdrawal in all cases pending in this court in which he is counsel of record, serve this order on his clients in all pending cases, inform the clients that they must obtain new counsel, and he shall turn over all client files and materials to the clients. Also, within 21 days, Gadda shall file proof with the clerk of this court that he has completed the above requirements. Gadda shall send to the clerk of this court the full identification of his clients in all pending cases in this court and such identification shall include the following information as to each client:

A. Full name

B. Current mailing address

C. Telephone number, if known

D. The Ninth Circuit appeal file number

E. The BIA appeal file number, if any

The Clerk shall deliver certified true copies of this opinion and order to the Clerks of the Supreme Court of the United States and the United States District Court for the Northern District of California, to the California State Bar and to the California State Bar Association, ATTN: Enforcement Department, 180 Howard Street, San Francisco, CA, 94105, and to the Executive Office of Immigration Review, Office of the General Counsel, ATTN: Bar Counsel, 5107 Leesburg Pike, Suite 2400, Falls Church, VA 22041. *See* 9th Cir. R. 46–2(g).

are deleted.

The following five paragraphs shall be inserted at slip op. 4046 and substituted for the deleted text:

Within 21 days of the date of this order, respondent Gadda shall file notices of withdrawal in all cases pending in this court in which he is listed as counsel of record as of June 1, 2004, serve this order and the court's April 1, 2004 order and opinion on his clients in the pending cases, and turn over all client files and materials to the clients. Respondent Gadda shall inform his clients in the pending cases that they must (1) obtain new counsel; or (2) notify the court that they wish to represent themselves; or

(3) request that the court appoint counsel for them. He shall further notify them that he can no longer provide any legal assistance for them and may not collect fees for future services. Also within 21 days of this order, respondent Gadda shall file proof with the court that he has completed the above requirements and send to the court the addresses of his clients in all pending cases.

With the above amendments, Gadda's motion is denied. No motions for reconsideration, rehearing, clarification, modification, or stay of the mandate shall be filed or entertained. The mandate shall issue forthwith.

Failure to comply with this order within the time permitted will result in the imposition of monetary sanctions of not less than $1,000, without further notice, for each case in which respondent Gadda fails to fulfill the requirements of this order.

The Clerk shall serve copies of this order on the Clerks of the United States Supreme Court and the United States District Court for the Northern District of California; on the State Bar of California, Attention: Enforcement Department, 180 Howard Street, San Francisco, CA, 94105; and on the Executive Office for Immigration Review, Office of the General Counsel, Attention: Bar Counsel, 5107 Leesburg Pike, Suite 2400, Falls Church, VA 22041. *See* 9th Cir. R. 46–2(g).

The Clerk shall serve this order on Gadda by telephone and by certified mail, return receipt requested.

## OPINION

BEEZER, Circuit Judge.

On July 30, 2001, the California State Bar Court (the "State Bar Court") found that Miguel Gadda, Esq. repeatedly failed to perform legal services competently. It placed Gadda on involuntary inactive status and recommended that Gadda be disbarred.

This opinion and order relate to two federal proceedings resulting from the State Bar Court's recommendation. In the first, Gadda appeals an order of the United States District Court for the Northern District of California, which denies Gadda's motion to preliminarily enjoin the Board of Immigration Appeals ("BIA") decision to suspend him from practice based on his suspension by the State Bar Court. *Gadda v. Ashcroft,* No. 02–15113. Gadda asserts that the State Bar Court cannot affect his right to practice before the BIA. The other proceeding is a disciplinary action initiated by this court after we received notice of Gadda's suspension from practice by the State Bar Court. *In re Gadda,* No. 02–80014.

Gadda argues that any reciprocal discipline imposed by the BIA or by this court based on the State Bar Court's suspension order is invalid because the Supreme Court of California lacked jurisdiction to discipline him. He claims that federal law preempts the states' authority to regulate attorneys, like him, who practice only in the administration of immigration law and in the federal courts, but not in the state courts. Because both of these proceedings involve the same underlying preemption issue, we consolidate them for opinion purposes only.

We conclude that federal law does not preempt the Supreme Court of California's authority to suspend or disbar attorneys admitted to practice in California state courts. The Supreme Court of California's discipline orders may serve as the basis for reciprocal disbarment actions by both the BIA and this court.

We disbar Gadda from the practice of law before the United States Court of Appeals for the Ninth Circuit.

## I

Gadda was admitted to the California State Bar in 1975. Thereafter, he was admitted to practice law and became a member of the bar of the United States District Court for the Northern District of California, the United States Court of Appeals for the Ninth Circuit, and the Supreme Court of the United States. He was also admitted to practice before the Board of Immigration Appeals ("BIA") and was authorized to appear for clients before the BIA and in all Immigration Courts throughout the United States.

### A. California State Court Disciplinary Proceedings

On August 26, 2002, the Review Department of the California State Bar Court (the "Review Department") affirmed the State Bar Court's decision recommending Gadda's disbarment and placing him on involuntary inactive status. *In re Gadda*, 2002 WL 31012596, at *1 (Cal.Bar Ct. Aug.26, 2002). On January 22, 2003, the Supreme Court of California ordered that Gadda be disbarred from the practice of law in California, effective February 21, 2003. *In re Gadda*, 539 U.S. 943, 123 S.Ct. 2618, 156 L.Ed.2d 629, (Cal.2003).

The Review Department's opinion surveyed Gadda's history of federal immigration practice, concluding that "disbarment is warranted under the circumstances for the protection of the public, the courts, and the legal profession." *In re Gadda*, 2002 WL 31012596, at *1. The Review Department cited seventeen acts of misconduct extending over six years and involving eight federal immigration client matters and one client trust account matter. This misconduct included Gadda's failure to appear at scheduled court conferences and to keep clients apprised of the proceedings and relevant court dates. Five of Gadda's clients were ordered deported in absentia

and at least six courts found Gadda to have provided ineffective assistance. The Review Department concluded that Gadda failed "to perform legal services competently, demonstrated indifference toward rectification of or atonement for the consequences of his misconduct, and significantly harmed clients." *Id.* at *32; *see id.* at *4–30 (discussing Gadda's misconduct). The Review Department determined that aggravating factors, including prior discipline for similar misconduct in 1990, *see Gadda v. State Bar*, 50 Cal.3d 344, 267 Cal.Rptr. 114, 787 P.2d 95 (1990), outweighed any mitigating factors Gadda presented. *Id.* at *30–33, 267 Cal.Rptr. 114, 787 P.2d 95.

We incorporate by reference that portion of the Review Board's opinion which inventories Gadda's incompetence between 1994 and 1999. Of the eight federal immigration client matters which the Review Board describes, that of the Saba family is especially egregious.

The four minor Saba children applied for political asylum. After the INS denied their application, the children retained Gadda to represent them. Gadda advised the children to withdraw their asylum claim; the Immigration Judge ("IJ") ordered that they voluntarily depart from the United States.

Thereafter, the children's parents became naturalized citizens. The children were eligible for priority consideration of their application for adjustment of status to legal residency or citizenship based on their parents' naturalization. However, as a result of Gadda's neglect and incompetence, the children were deprived of an adjustment of their immigration status, and ultimately were placed in deportation proceedings.

Gadda moved for a stay of the children's deportation. In the course of a hearing on

that motion, Gadda left the Saba family unrepresented before an immigration officer. Gadda also directed the children to sign a statement promising they would voluntarily depart once the stay expired. The immigration court granted the stay but the children did not depart as promised. Gadda assured the children that he was appealing the earlier BIA decision.

Because Gadda negligently allowed the time for an appeal from the BIA to this court to lapse, he was forced to seek habeas corpus relief before the district court. Gadda directed William Gardner, an attorney Gadda employed on a contract basis but did not supervise, to file the habeas petition. Before Gardner filed the habeas petition, the IJ ordered the Saba children to be deported on account of their refusal to depart voluntarily at the expiration of the stay. Gadda once again advised the children not to comply with the court's order.

Gardner subsequently filed the habeas petition and the district court ordered a hearing. The district court made a suasponte finding of ineffective assistance by Gadda and remanded the matter to the immigration court to reopen the deportation hearing. *Saba v. INS*, 52 F.Supp.2d 1117, 1126 (N.D.Cal.1999). By the time the case was heard, two of the Saba children were no longer minors. Gadda has not refunded the $3,000 the Saba children paid him.

Regarding the Saba matter, the Review Department agreed with the State Bar that Gadda "recklessly and repeatedly fail[ed] to perform legal services" and "failed to refund unearned fees promptly upon termination." *In re Gadda*, 2002 WL 31012596, at *6–7. Specifically, the Review Department found Gadda's performance incompetent in the following ways:

(1) by leaving the children alone, unrepresented, in the middle of a hearing before an immigration officer and advising them to sign a voluntary departure form; (2) by failing to advise the Saba children to depart on or before [the deadline]; (2) by failing to [timely] move to reopen deportation proceedings ...; (4) by failing to file a petition for review with the Ninth Circuit; (5) by failing to file for adjustment of status after Mrs. Saba became a naturalized citizen ... and instead filing for adjustment of status on the children's last day to depart voluntarily, approximately three months later; and (6) by failing to supervise Gardner in filing a petition for writ of habeas corpus.

*Id.* at *6.

### B. *Gadda v. Ashcroft*, No. 02–15113— appeal from BIA disciplinary proceedings

Based on the State Bar Court's order, on October 2, 2001, the BIA suspended Gadda from practice before the BIA, the Immigration Courts, and the Department of Homeland Security ("DHS"), formerly the Immigration and Naturalization Service ("INS").[1] Gadda unsuccessfully sought a preliminary injunction of the BIA's action in the district court. *See Gadda v. Ashcroft*, 2001 WL 1602693 (Dec. 7, 2001). Gadda appealed the denial of the preliminary injunction to this court. We deferred submission pending the outcome of disciplinary proceedings before the BIA.

---

1. As a result of the transfer of the functions of the INS to the DHS, the regulations in chapter I of the Code of Federal Regulations were transferred or duplicated to a new chapter V, and this regulation is now codified at 8 C.F.R. § 1003.105. *See* Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed.Reg. 9824, 9831 (Feb. 28, 2003).

*See Gadda v. Ashcroft,* No. 02–15113 (9th Cir. Feb. 6, 2003) (order).

■ Meanwhile, the Office of General Counsel for the Executive Office for Immigration Review ("EOIR") initiated disciplinary proceedings and an adjudicatory official suspended Gadda indefinitely from practice on August 22, 2002. On July 8, 2003, the BIA dismissed Gadda's appeal and ordered him expelled from practice before the BIA, the Immigration Courts, and the DHS. *In re Gadda,* 23 I & N Dec. 645, 649 (BIA 2003).[2]

### C. Ninth Circuit Disciplinary Proceedings, No. 02–80014

On May 29, 2002, pursuant to Ninth Circuit Rule 46–2(c), we ordered Gadda to resign from the Ninth Circuit's bar or show cause why he should not be suspended or disbarred based on the California State Bar Court's order placing him on involuntary inactive status and recommending that he be disbarred. Gadda responded and we referred the case to the Appellate Commissioner. *See* 9th Cir. R. 46–2(f). On September 25, 2002, the Appellate Commissioner stayed the disciplinary proceedings pending a decision by the Supreme Court of California on the State Bar Court's recommendation or a decision by us in *Gadda v. Ashcroft,* No. 02–15113.

■ Following the Supreme Court of California's January 22, 2003 order disbarring Gadda, the Appellate Commissioner again ordered Gadda to resign from the bar of the United States Court of Appeals for the Ninth Circuit or show cause why he should not be suspended or disbarred. Gadda requested a stay, claiming that the Supreme Court of California's disbarment order was not final and that we should first resolve *Gadda v. Ashcroft,* No. 02–15113.[3]

The Appellate Commissioner conducted a hearing on March 27, 2003 and filed a report and recommendation on May 22, 2003. The Appellate Commissioner recommends that Gadda be disbarred from the practice of law before the United States Court of Appeals for the Ninth Circuit.

### II

■ "Membership in the bar is a privilege burdened with conditions. An attorney is received into that ancient fellowship for something more than private gain. He becomes an officer of the court, and, like the court itself, an instrument or agency to

---

2. On July 14, 2003, in light of the BIA's expulsion order, the Government moved to dismiss Gadda's appeal as moot. Although the BIA's final order does moot Gadda's appeal from the district court's denial of his preliminary injunction, we address Gadda's underlying preemption issue. As noted, Gadda alleges that federal preemption deprives the Supreme Court of California of jurisdiction to suspend him, rendering the BIA's reciprocal disbarment invalid. Gadda raises this same argument with respect to the Appellate Commissioner's recommendation of reciprocal disbarment, discussed *infra.*

In response to the BIA's expulsion order, Gadda appealed to the district court on October 23, 2003. On December 12, 2003, Gadda

moved this court "to augment the record and offer opposing counsel to settle cases pending before the district court and the Ninth Circuit or judicial notice of the court's record." We hereby deny Gadda's motion.

3. Gadda's motion to stay the Supreme Court of California's disbarment order is now moot. The Supreme Court of California has denied Gadda's motions to reconsider or reopen its disbarment order and his request for a stay of that order. On June 23, 2003, the Supreme Court of the United States denied Gadda's petition. *Gadda v. State Bar of California,* 539 U.S. 943, 123 S.Ct. 2618, 156 L.Ed.2d 629 (2003) (mem.). The Supreme Court of California disbarment order is final. *See* Cal. Ct. R. 953(a).

advance the ends of justice." *In re Snyder*, 472 U.S. 634, 644, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985) (quoting *People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 470–71, 162 N.E. 487 (1928)) (internal quotations and alterations omitted). We have both statutory and inherent power to suspend or disbar an attorney who has been admitted to this court's bar.

■ Federal Rule of Appellate Procedure ("FRAP") 46 regulates attorney conduct, including admission to the bar of the Ninth Circuit and the conditions for suspension and disbarment. FRAP 46 provides that a member of this court's bar is subject to suspension or disbarment if the member either (1) "has been suspended or disbarred from practice in any other court"; or (2) "is guilty of conduct unbecoming a member of the court's bar." Fed. R.App. P. 46(b)(1)(A).[4]

## A. Reciprocal Discipline

In this case, Gadda's suspension and disbarment from the practice of law in California forms the basis for his disbarment from the BIA and this court. Gadda argues that such reciprocal discipline is inappropriate because the Supreme Court of California did not have jurisdiction to discipline him.

■ We are not conclusively bound by the State Bar Court's suspension of Gadda or the Supreme Court of California's disbarment. *In re Kramer*, 282 F.3d 721, 723 (9th Cir.2002); *In re Rosenthal*, 854 F.2d 1187, 1188 (9th Cir.1988) (per curium). We independently examine the State Bar Court's proceeding.[5] *Kramer*, 282 F.3d at 723. We will extend great deference to the state court's determination unless our independent review reveals one of the following conditions: (1) a lack of due process; (2) insufficient proof of attorney misconduct; or (3) "some other grave reason exist[s] that should prevent the court from recognizing the state court's determination." *Id.* (citing *Selling v. Radford*, 243 U.S. 46, 51, 37 S.Ct. 377, 61 L.Ed. 585 (1917)); *see also Kramer*, 282 F.3d at 724.

■ Gadda bears the burden of demonstrating, through clear and convincing evidence, that one of the above *Selling* conditions exists. *Kramer*, 282 F.3d at 724–25. We presume the correctness of the State Bar Court's factual findings. *Rosenthal*, 854 F.2d at 1188.

Gadda does not argue directly that any of the *Selling* conditions existed in the California proceedings; instead, he argues more generally that the Supreme Court of California did not have jurisdiction to disbar him. Gadda contends that he prac-

---

4. Ordinarily, suspension or disbarment is not appropriate for conduct that is aberrant to an attorney's practice and/or does not affect our ability to function in the public interest. The federal courts, with the approval of Congress, have promulgated disciplinary rules pursuant to their general rule-making authority to regulate this lesser conduct. Fed. R.App. P. 38 (providing for the imposition of "just damages and single or double costs to the appellee" for frivolous appeals); 46(c) (allowing for appropriate disciplinary action); *see Gallo v. United States Dist. Ct.*, 349 F.3d 1169, 1179–80 (9th Cir.2003) ("Federal courts have inherent and broad regulatory authority to make rules respecting the admission, practice, and disci-

pline of attorneys in the federal courts."). We also have authority under 28 U.S.C. § 1827 to hold attorneys personally liable for excessive costs for unreasonably multiplying proceedings.

5. Because the Supreme Court of California summarily denied Gadda's petition for a writ of review, we examine the Review Department's opinion, which is the final judicial determination on the merits. *See* Cal. Ct. R. 954(b) (State Bar Court recommendation is filed as an order of the Supreme Court upon denial of petition for review).

tices only federal immigration law and that Congress has granted exclusive authority to the United States Attorney General to discipline attorneys who appear before the BIA, Immigration Courts, and the DHS. He argues that federal law preempts a state's authority to discipline or regulate the conduct of attorneys who, like him, practice exclusively in the immigration or federal courts and, accordingly, the Supreme Court of California lacked jurisdiction to disbar him. Gadda's preemption argument lacks merit.[6]

■ We apply a presumption against federal preemption unless the state attempts to regulate an area in which there is a history of significant federal regulation. *See Ting v. AT&T*, 319 F.3d 1126, 1136 (9th Cir.2003). Gadda does not contend that attorney discipline is such an area. In fact, the opposite is true. The Supreme Court of the United States has long recognized that the several states have an important interest in regulating the conduct of the attorneys whom they license. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *see also Theard*, 354 U.S. 278, 281, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957) ("The two judicial systems of courts, the state judicatures and the federal judiciary,

have autonomous control over their officers."); *cf. Matter of Abrams*, 521 F.2d 1094, 1101 (3rd Cir.1975) (recognizing the "absolute and unfettered power" of the federal courts to admit and discipline members of its bar independently and separately from admission and disciplinary procedures of the state courts).

■ Federal law may preempt state law in three ways: (1) express preemption; (2) field preemption; and (3) conflict preemption. *See Ting*, 319 F.3d at 1135.

■ Express preemption occurs when Congress enacts a statute that expressly commands that state law on the particular subject is displaced. *Id.* Gadda does not contend that any such statute exists.

■ Field preemption occurs when the federal statutory scheme is sufficiently comprehensive to infer that Congress left no room for supplementary regulation by the states. *See Id.* at 1136. In this case, Gadda argues that the regulation of immigration attorneys in California is comprehensively covered by the federal regulatory scheme governing attorney conduct before the BIA, Immigration Courts, and the DHS. Gadda claims that this federal scheme leaves no room for additional attorney regulation by California. The federal regulations provide that

---

**6.** Gadda raised this identical issue before the California disciplinary proceedings, where it was addressed and rejected by the State Bar Court Review Department. *In re Gadda*, 2002 WL 31012596, at *1–4. The Review Board stated that the Supreme Court of California has the inherent power to discipline attorneys licensed to practice in the State of California: "[I]f an attorney admitted to practice in the courts of this state commits acts in reference to federal court litigation which reflect on his integrity and fitness to enjoy the rights and privileges of an attorney in the state courts, proceedings may be taken against him in the state court." *Id.* at *2 (quoting *Geibel v. State Bar*, 11 Cal.2d 412, 79

P.2d 1073 (1938) (internal quotations omitted)). The Review Department extended this reasoning to apply to federal agencies.

The Supreme Court of California also implicitly rejected this argument when that court denied review of the State Bar Court's recommendation to disbar Gadda. *See In re Rose*, 22 Cal.4th 430, 93 Cal.Rptr.2d 298, 993 P.2d 956, 973 (2000) (Supreme Court of California conducts de novo review of facts and law when attorney petitions for review of State Bar Court recommendation of disbarment).

As noted above, Gadda also raised this issue in *Gadda v. Ashcroft*, No. 15113, seeking to invalidate his suspension by the BIA.

an attorney may represent a person in immigration proceedings only if the attorney "is a member in good standing of the bar of the highest court of any State ... and is not under any order of any court suspending, enjoining, restraining, disbarring, or otherwise restricting him in the practice of law." 8 C.F.R. §§ 1292.1(a)(1) & (e), 1001.1(f). Beyond merely leaving room for supplementary state regulation, the immigration regulations *condition* an attorney's ability to practice in immigration court on the attorney's good standing as a member of the bar of a state court.

We observe that the immigration regulations expressly allow for supplementary state regulation. For example, absent good cause, the BIA must immediately suspend an attorney who has been disbarred or suspended from practice on an interim or permanent basis by the highest court of any state, territory, the District of Columbia, or any federal court. 8 C.F.R. § 1003.103(a)(1), (2). An immigration attorney also has a duty to inform the EOIR if he or she has been disbarred or suspended by the highest court of any state or territory, or by a federal court. 8 C.F.R. § 1003.103(c). A final order of disbarment or suspension by a state or territory or federal court constitutes a rebuttable presumption that disciplinary sanctions should be imposed by the BIA. 8 C.F.R. § 1003.103(b)(2); *see* 8 C.F.R. §§ 1292.3(c)(3)(ii), 1003.102(e).

The immigration regulations thus promote reliance on and cooperation with the states, territories, and federal courts. They seek to ensure that qualified attorneys practice before the BIA, Immigration Courts, and the DHS, and that their standards for practice are not contrary to the applicable disciplinary rules of other jurisdictions. The federal immigration regulatory scheme does not occupy the field of discipline for immigration attorneys.

Gadda maintains nonetheless that the interpretation of the applicable regulations by the Attorney General acts to preempt the field. Gadda cites the following statement by the Attorney General regarding the most recent amendments to the federal regulations controlling the attorney discipline system in the BIA and Immigration Courts:

It is imperative that EOIR and the Service administer a uniform disciplinary system among the respective Immigration Courts. For the reasons explained in SSA's [Social Security Administration] supplementary information to their disciplinary rule, EOIR and the Service should not be expected or required to apply numerous local rules, or local interpretations of the rules, to problems that require national uniformity. Applying local rules or local interpretations in lieu of a national standard would leave immigration attorneys in one state subject to discipline, while possibly exempting immigration attorneys in another state. EOIR and the Service do not believe that it would benefit the Board, the Immigration Courts, the Service, the public, or attorneys to promote inconsistency in regulating the conduct of practitioners, who all practice before the same forum.

Professional Conduct for Practitioners; Rules and Procedures, 65 Fed.Reg. 39,513, 39,524 (June 27, 2000).

Contrary to Gadda's assertion, the Attorney General's statement merely clarifies that the regulations are designed to implement uniform, nationwide rules of professional conduct for attorneys who practice before the immigration courts; it does not relate to state oversight of that same conduct, nor does it posit that agency oversight is the sole means of regulating immigration attorney conduct. Moreover, the statement goes on to further refute

Gadda's interpretation by explaining the necessary cooperation between the federal immigration disciplinary process and that of the states:

> EOIR and the Service anticipate working closely with the various state bars when investigating disciplinary complaints.... Cooperation between the federal government and the 51 state bar disciplinary authorities will optimize resources and minimize duplication of investigations. In general, state bars have not been resistant to the Federal government's efforts to assist in protecting the public by scrutinizing the professional conduct of attorneys.

*Id.*

Gadda presents no evidence that the Attorney General has intended, through the applicable regulations, to preempt the field of attorney discipline for immigration attorneys.

▨▨▨ The third way in which federal law may preempt state law is through conflict preemption. *See Ting*, 319 F.3d at 1135–36. Preemption may be inferred if there is an actual conflict between federal and state law, or where compliance with both is impossible.

▨▨▨ Gadda points to no conflict between California's professional conduct rules and the federal regulations for immigration attorneys. The federal regulations clearly contemplate a state scheme and

incorporate the results of state disciplinary proceedings into its disciplinary scheme. The two schemes do not conflict. Gadda fails to show that federal regulation of attorneys before the immigration courts preempts state regulation of attorneys by express, field, or conflict preemption. *See, e.g., Berger v. Cuyahoga County Bar Ass'n,* 983 F.2d 718, 724 (6th Cir.1993). Because the Supreme Court of California had jurisdiction to disbar Gadda, the reciprocal disbarments by the BIA and this court are valid.

## B. Conduct Unbecoming

▨▨▨ Even if the California courts had not acted to disbar Gadda, we have independent authority to suspend or disbar him from practice before the United States Court of Appeals for the Ninth Circuit pursuant to FRAP 46(b)(1)(B). Conduct unbecoming a member of the bar of the Ninth Circuit is sufficient cause for disbarment. Unlike some of our sister circuits, the Ninth Circuit has not adopted local rules elaborating on FRAP 46's "conduct unbecoming" standard. *Cf.* 9th Cir. R. 46–2(a). The Supreme Court has held that "conduct unbecoming" is conduct "contrary to professional standards that show an unfitness to discharge continuing obligations to clients or courts, or conduct inimical to the administration of justice." *Snyder,* 472 U.S. at 645, 105 S.Ct. 2874.[7] We have

---

**7.** The Supreme Court of the United States has never directly construed its own "conduct unbecoming" language. *See* Sup.Ct. R. 8 (providing for suspension for "engag[ing] in conduct unbecoming a member of the Bar of this court"); *cf. Snyder,* 472 U.S. at 643–45, 105 S.Ct. 2874 (finding that similarly-worded Appellate Rule 46 was not unconstitutionally vague when read in light of "case law, applicable court rules, and 'the lore of the profession' as embodied in the codes of professional conduct."). In *In re Strickland,* the Court spoke in general terms about its standard for attorneys: "[M]embership in the Bar of the

country's highest Court should remain a privilege and a responsibility.... [A]n applicant must show ... that he 'appears ... to be of good moral and professional character.'" 453 U.S. 907, 909, 101 S.Ct. 3138, 69 L.Ed.2d 991 (1981) (mem.); *see also Selling,* 243 U.S. at 49, 37 S.Ct. 377 (interpreting predecessor to Rule 8 as requiring "the continued possession of a fair private and professional character"). On those occasions where the Court has applied its own "conduct unbecoming" standard, it has been in response to conduct such as refusing to return excess fees despite a

consistently found conduct unbecoming where an attorney failed to prosecute an appeal with due diligence. *See, e.g., Matter of Withey*, 537 F.2d 324, 326 (9th Cir. 1976) (ordering suspension for failure to prosecute appeal); *Matter of Young*, 537 F.2d 323, 324 (9th Cir.1976) (threatening to suspend or disbar attorney for failure to prosecute the appeal with due diligence); *In re Margolin*, 518 F.2d 551, 551 (9th Cir.1975) (holding that undue delay in filing of appeal warrants discharge from further representation, imposition of fine, and indefinite suspension); *United States v. Ferrara*, 469 F.2d 83, 83 (9th Cir.1972) (per curiam) (fining attorney for failure to prosecute appeal with due diligence pursuant to Rule 46(c)); *In re Chandler*, 450 F.2d 813, 814–15 (9th Cir.1971) (suspending attorney for three years after first offence of gross negligence, which included the failure to perfect client's appeal and protect claim from default); *United States v. Smith*, 436 F.2d 1130, 1133 (9th Cir. 1970) (ordering suspension for failure to prosecute). Intentional conduct is not necessary for discipline under FRAP 46; lack of diligence that impairs the deliberations of the court is sufficient. *DCD Programs, Ltd. v. Leighton*, 846 F.2d 526, 528 (9th Cir.1988).

Because we have jurisdiction over appeals from the immigration courts, the quality of the practice by attorneys appearing before the immigration courts is crucial to our ability to administer justice and function effectively. The quality of our review is heavily dependent on the record established in administrative immigration hearings, which in turn is dependent on the competence of the attorneys creating that record. Gadda's incom-

petence impedes our operations and endangers the rights of his clients.

In the course of one immigration matter, for example, Gadda neglected to introduce crucial documents relating to changed country conditions. *In re Gadda*, 2002 WL 31012596, at *11. Although his client was in possession of such documents, Gadda failed to have the documents translated and offered as evidence. *Id.* In that same matter, the Review Department found that Gadda failed to elicit persuasive testimony in support of his client's contention of fear of future persecution. *Id.* at *11–12. Gadda currently represents petitioners in approximately 50 matters pending before this court. We hold that conduct such as his before the immigration courts is sufficient to constitute "conduct unbecoming" a member of the bar of this court.

**C. Inherent Power**

 We hold that we also have inherent authority respecting the suspension and disbarment of attorneys who perform incompetently in federal immigration proceedings. *E.g., Snyder*, 472 U.S. at 645 n. 6, 105 S.Ct. 2874 ("Federal courts admit and suspend attorneys as an exercise of their inherent powers; the standards imposed are a matter of federal law."); *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir.1993) ("Courts are endowed with inherent powers which are necessary to the conduct of their business, including the power to sanction."); *accord Comuso v. National R.R. Passenger Corp.*, 267 F.3d 331, 339 (3d Cir.2001); *In re Bailey*, 182 F.3d 860, 864–65 (Fed.Cir.1999); *Matter of Jacobs*, 44 F.3d 84, 87 (2d Cir.1994); *Berger*, 983 F.2d at 724; *see generally* Judith A. McMorrow & Daniel R. Coquillette,

---

Court order, *In re Gilbert*, 276 U.S. 294, 48 S.Ct. 309, 72 L.Ed. 580 (1928), and failing to respond to communications · regarding a pending case, *In the Matter of Davis*, 289 U.S.

704, 53 S.Ct. 658, 77 L.Ed. 1461 (1933). *See also In re Discipline of Clinton*, 534 U.S. 806, 122 S.Ct. 36, 151 L.Ed.2d 254 (2001) (mem.); 534 U.S. 1016, 122 S.Ct. 584 (mem.).

Moore's Federal Practice, The Federal Law of Attorney Conduct, Ch. 807 (3d ed.2001). This power derives from an attorney's role as an officer of the court which granted the attorney admission to the bar, *Theard*, 354 U.S. at 281, 77 S.Ct. 1274; it is necessary to maintain the respectability and harmony of the bar, *Ex parte Burr*, 9 Wheat. 529, 531, 6 L.Ed. 152 (1824), as well as to protect the public, *Theard*, 354 U.S. at 281, 77 S.Ct. 1274. We exercise this power with restraint and discretion. *See Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455 (1980).

 "[T]he behavior for which[an attorney] is disciplined [pursuant to our inherent power] must have some nexus with the conduct of the litigation before the court." *United States v. Wunsch*, 84 F.3d 1110, 1115 (9th Cir.1996) (holding that the district court did not abuse its discretion by using its inherent power in the course of an ongoing proceeding to sanction a defense attorney who harassed an assistant United States Attorney following defense attorney's disqualification). Such a connection exists in the context of immigration proceedings because, as noted above, we have jurisdiction over appeals from the immigration courts and rely on the records established in those courts.[8]

## III

It is **ORDERED** that Miguel Gadda, Esq. should be and hereby is disbarred from the practice of law before the United States Court of Appeals for the Ninth Circuit and his name shall be stricken from the roll of attorneys, all pursuant to FRAP 46(b)(1)(A), (B).

Within 21 days of the date of this order, respondent Gadda shall file notices of withdrawal in all cases pending in this court in which he is listed as counsel of record as of June 1, 2004, serve this order and the court's April 1, 2004 order and opinion on his clients in the pending cases, and turn over all client files and materials to the clients. Respondent Gadda shall inform his clients in the pending cases that they must (1) obtain new counsel; or (2) notify the court that they wish to represent themselves; or (3) request that the court appoint counsel for them. He shall further notify them that he can no longer provide any legal assistance for them and may not collect fees for future services. Also within 21 days of this order, respondent Gadda shall file proof with the court that he has completed the above requirements and send to the court the addresses of his clients in all pending cases.

With the above amendments, Gadda's motion is denied. No motions for reconsideration, rehearing, clarification, modifi-

---

8. Of course, our statutory and inherent powers to regulate attorneys admitted to the Ninth Circuit bar coexist with the separate, independent powers of federal administrative agencies to do the same. *Davy v. SEC*, 792 F.2d 1418, 1421 (9th Cir.1986) ("[A]gencies have been given the power to police the conduct of those who practice before them."); *see also Checkosky v. SEC*, 23 F.3d 452, 456 (D.C.Cir.1994) (citing *Goldsmith v. Board of Tax Appeals*, 270 U.S. 117, 122, 46 S.Ct. 215, 70 L.Ed. 494 (1926)); *Koden v. United States Dept. of Justice*, 564 F.2d 228, 233 (7th Cir. 1977) ("It is elementary that any … administrative agency which has the power to admit attorneys to practice has the authority to disbar or discipline attorneys for unprofessional conduct."). *But cf. Hustedt v. Workers' Comp. Appeals Bd.*, 30 Cal.3d 329, 178 Cal. Rptr. 801, 636 P.2d 1139, 1146 (1981) (holding that law granting state administrative agency the power to prohibit attorneys from practicing before the agency or any of its judges unconstitutionally restricts the state supreme court's inherent power to discipline attorneys). In the case of agencies, this power, though limited, exists whether or not expressly authorized by statute. *Touche Ross & Co. v. SEC*, 609 F.2d 570, 582 (2d Cir.1979).

cation, or stay of the mandate shall be filed or entertained. The mandate shall issue forthwith.

Failure to comply with this order within the time permitted will result in the imposition of monetary sanctions of not less than $1,000, without further notice, for each case in which respondent Gadda fails to fulfill the requirements of this order.

The Clerk shall serve copies of this order on the Clerks of the United States Supreme Court and the United States District Court for the Northern District of California; on the State Bar of California, Attention: Enforcement Department, 180 Howard Street, San Francisco, CA, 94105; and on the Executive Office for Immigration Review, Office of the General Counsel, Attention: Bar Counsel, 5107 Leesburg Pike, Suite 2400, Falls Church, VA 22041. *See* 9th Cir. R. 46–2(g).

The Clerk shall serve this order on Gadda by telephone and by certified mail, return receipt requested.

**DISBARRED.**