07-9087-am

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2009

(Decided: January 14, 2010)

Docket No. 07-9087-am

_____

In re Peter Koenig,

*Attorney*.

_____

Before: Cabranes, Sack, and Wesley, Circuit Judges.

This Court's Committee on Admissions and Grievances ("the Committee") has recommended that Peter Koenig, an attorney admitted to the bar of the State of New York, be disciplined. We adopt the Committee's findings of fact, publicly reprimand Koenig for the misconduct described in the Committee's report, and bar him from admission to the bar of this Court and from the practice of law before this Court in any future cases.

Peter Koenig, Esq., New York, N.Y., pro se.

**PER CURIAM:**

By order filed in December 2007, this panel referred Peter Koenig to this Court's Committee on Admissions and Grievances ("the Committee") for investigation of the matters described in that order and preparation of a report on whether he should be subject to disciplinary or other corrective measures.

During the Committee's proceedings, Koenig had the opportunity to address the matters discussed in the Court's referral order and to testify under oath at a hearing held on September 9, 2008. Prior to the hearing, Koenig submitted a one-page response to the December 2007 order; although he was given the opportunity to submit post-hearing supplementary materials, he declined to do so. Koenig represented himself during the Committee's proceedings. Presiding over the hearing were the Honorable Howard Levine, Mary Jo White, Esq., and Loretta Lynch, Esq. In March 2009, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations. Thereafter, the Court provided Koenig with a copy of the Committee's report, and Koenig responded that he did not intend to contest the report.

In its report, the Committee concluded that there was clear and convincing evidence that Koenig had engaged in conduct warranting the imposition of discipline. Specifically, the Committee found that Koenig had, *inter alia*, neglected nine cases before the Court; failed to notify at least one client that her

2

case had been dismissed, causing her to be seized by immigration authorities; and repeatedly appeared as counsel of record in this Court without ever having been admitted to this Court's bar. *See* Report at 5-8. After noting the presence of various aggravating and mitigating factors, *id.* at 6, 8, and that Koenig did not intend to practice in this Court in the future, *id.* at 8, the Committee recommended that he be precluded from admission to this Court's bar and from the practice of law before this Court in any future cases, *id.* at 9.

Upon due consideration of the Committee's report, the underlying record, and Koenig's submissions, it is hereby ORDERED that the Committee's findings and recommendations are adopted by the Court, and Koenig is PUBLICLY REPRIMANDED for the misconduct described in the Committee's report and BARRED from admission to the bar of this Court and from the practice of law before this Court in any future cases.

The fact that Koenig is not a member of this Court's bar does not shield him from this Court's disciplinary authority. An attorney who avails himself of the privileges of practice before this Court also accepts the duties and obligations that are an inherent part of that practice. Although this Court has not explicitly addressed this point in its case law, Rule 46(c) of the Federal Rules of Appellate Procedure makes clear the authority of this Court over non-member attorneys who practice before this Court: "[a] court of appeals may discipline an attorney who

3

practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule." Unlike Rule 46(b), the scope of Rule 46(c) is not limited to members of the Court's bar. *See also* Fed. R. App. P. 46, 1967 Advisory Committee's Note, ¶ 4 (stating that Rule 46(c) "affords some measure of control over attorneys who are not members of the bar of the court").

We clarify one additional point, in order to avoid future misunderstanding of the import of this order. We do not deem the sanction we now impose, barring Koenig from admission to this Court's bar, to be equivalent to the disbarment of an attorney who is already a member of this Court's bar. Although we have no control over the form of reciprocal discipline that other disciplinary authorities may impose on Koenig based on this order, we do not wish to give the impression that we are imposing a sanction that is equivalent to the more severe sanction of disbarment.

This order must be disclosed in any future disciplinary proceeding or bar application, and if required by any bar or court rule or order. Furthermore, the Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other published decisions of this Court. The text of this panel's December 2007 order and the Committee's report are also to be released to the public, as appendices to the present order. The Clerk of Court also is directed to serve a copy of

4

this order on Koenig, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee for the New York State Appellate Division, First Department, the attorney disciplinary officials for the Executive Office of Immigration Review, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.

## APPENDIX 1

## Text of December 2007 order

For the reasons that follow, Peter Koenig is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether he should be subject to disciplinary or other corrective measures. <u>See</u> Second Circuit Local Rule 46(h).[1]  We express no opinion here as to an appropriate disposition.  The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

Since 2004, this Court has dismissed 9 of the 11 petitions for review for which Koenig was counsel of record  for the petitioners, based on the petitioners' failure to comply with this Court's scheduling orders.  *See* Second Circuit cases docketed under 03-4979; 03-41023; 04-2579; 04-2821; 05-0163; 05-4777; 06-3540; 06-3542; 06-3544.

Furthermore, in *Duka v. Ashcroft*, the petitioner, in an affidavit accompanying her motion to reinstate her petition for review, stated that Koenig, after accepting an $850 retainer and agreeing to a total fee of $3000, regularly refused to speak with her about her case and permitted the appeal to be dismissed in December 2005 based on his failure to file a brief.  *See Duka*, 04-2579-ag, motion filed June 29, 2007 (Pet'r Aff.) ¶¶ 7-8. According to the petitioner, in June or July 2006, Koenig informed the petitioner that her work authorization had been denied due to the pendency of her case in this Court and that he could not assist her with the work authorization denial.  *Id.* at ¶ 9.  In

---

[1]  Second Circuit Local Rule 46(h) was superseded by new Local Rule 46.2 as of January 1, 2010.

May 2007, the petitioner was detained by immigration officials, who informed her that her appeal in this Court had been dismissed in December 2005. *Id.* at ¶ 11. After obtaining new counsel, the petitioner learned that Koenig had never submitted a brief on her behalf, and, as a result of that default, her petition had been dismissed. *Id.* at ¶ 12. The petitioner's new counsel stated that, although she had attempted to contact Koenig by telephone on several occasions, leaving messages explaining the situation and requesting that Koenig call counsel as soon as possible, Koenig failed to respond. *Id.* (Brown Decl.) at ¶ 5. In June 2007, the petitioner's new counsel sent Koenig a letter, again advising him of the situation and requesting that he contact counsel immediately to assist in the preparation of the petitioner's motion for reinstatement, but again Koenig failed to respond. *Id.* at ¶¶ 6-7. After the appeal was reinstated and a brief was filed for the petitioner, the case was remanded to the agency for a new decision, pursuant to a stipulation of the parties. *Id.*, order filed Oct. 31, 2007.

Finally, we note that the records of this Court indicate that, although Koenig has represented a number of parties in this Court, Koenig has never been admitted to this Court's bar, has no admission application pending, and has not sought to be admitted <u>pro</u> <u>hac</u> <u>vice</u>.

Upon due consideration of the matters described above, it is ORDERED that Peter Koenig is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report, pursuant to Federal Rule of Appellate Procedure 46, this Court's Local Rule 46(h), and the Rules of the Committee on Admissions and Grievances.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____/s/_____
        Michael Zachary
        Supervisory Staff Attorney
        Counsel to Grievance Panel

6

March 2009 Report of the Committee

on Admissions and Grievances

**REPORT & RECOMMENDATION**
Re: In re Peter Koenig, #07-9087-am

## I.    Introduction

By order dated December 18, 2007, the United States Court of Appeals for the Second Circuit (the "Court") referred Peter Koenig to the Committee on Admissions and Grievances (the "Committee"), for investigation of his conduct before the Court and for preparation of a report on whether he should be subject to disciplinary or other corrective measures.

The Court's referral order addressed three areas of concern regarding Koenig's conduct, including: (1) multiple defaults on scheduling orders, (2) a complaint by one of Koenig's former clients, and (3) Koenig's continued practice before the Court despite his failure to seek admission to the Second Circuit bar.

In light of Koenig's conduct, the Committee recommends that Koenig is permanently barred from practice before the Court. The following constitutes the Committee's report and recommendation to impose discipline on Koenig.

## II.    The Referral Order

### A.    Referral Order

The December 18, 2007 Referral Order ("Referral Order") stated that, since 2004, the Court has dismissed nine of the eleven petitions for review for which Koenig was counsel of record based upon the petitioners' failure to comply with the Court's scheduling orders. The Referral Order also explained that Mubera Duka, the petitioner in *Duka v. Ashcroft*, No. 04-2579-ag, and Koenig's former client, claimed in an affidavit accompanying her petition to

1

reinstate her petition for review that Koenig had been unresponsive to her inquiries about her case, allowed the case to default without her knowledge, and subjected her to seizure by immigration authorities. Ms. Duka also averred that Koenig had been uncooperative in efforts by her new counsel's to reinstate Ms. Duka's petition for review. In addition, the Referral Order stated that "the records of this Court indicate that, although Koenig has represented a number of parties in this Court, Koenig has never been admitted to this Court's bar, has no admission application pending, and has not sought to be admitted *pro hac vice*." Referral Order, at 2.

## III. This Disciplinary Proceeding

On March 21, 2008, this Committee issued an Order to Show Cause regarding Mr. Koenig's conduct as alleged in the Referral Order. After requesting an extension of time on April 16, 2008, which was granted, Koenig submitted a one-page written response to the Order to Show Cause ("Response") on May 3, 2008. A hearing was held in this matter on September 9, 2008, conducted by a sub-committee consisting of Mary Jo White, Loretta E. Lynch, and the Hon. Howard A. Levine. Koenig appeared *pro se*, and presented no witnesses. Koenig declined the sub-committee's invitation to submit a post-hearing response.

## IV. Factual Background

The following facts are taken from court records, the Response, Koenig's testimony at the September 9, 2008 hearing, and records of the Departmental Disciplinary Committee of the New York Supreme Court, Appellate Division, First Judicial Department (the "DDC").

Koenig has been a sole practitioner for 25 years, and his office is located at 299 Broadway, Room 903, New York, New York 10007. His practice focuses primarily on immigration law and domestic law matters, and he occasionally handles small criminal cases. Koenig has never had the assistance of any other law partners, associates, paralegals, secretaries or receptionists. He graduated from William & Mary Law School in 1975, and was admitted to the New York bar in 1977. He was admitted to the bar of the Federal District Court for the Southern District of New York in 1983. Koenig has never been admitted to practice before the Second Circuit.

Koenig has previously been sanctioned on three occasions by the DDC, which issued three letters of admonition to Koenig, addressing a total of five cases. Details of the DDC cases were provided to this Committee pursuant to a sharing order issued by the Appellate Division on October 29, 2008.[1] Koenig also has one case currently pending before the DDC, in which a

---

[1] At the hearing, Koenig stated that he had appeared before the DDC in "one or two things," but could not recall any of the details of the DDC investigations or resulting sanctions. Tr. 8:5-8:6. On October 23, 2008, the Committee moved before the Appellate Division for a sharing order pursuant to New York Judiciary Law § 90(10), authorizing the release to the Committee of all materials gathered by the DDC regarding any investigation into the conduct of Koenig. The DDC did not oppose the motion. On October 29, 2008, the Appellate Division issued an order providing that: "the motion is granted to the extent of directing the

2

former client accused Koenig of defaulting in a Second Circuit immigration case and failing to notify the client when the case was dismissed.

In the first DDC letter of admonition, dated October 6, 1986, Koenig was found to have violated Disciplinary Rule 6-101(A)(3) of the New York Code of Professional Responsibility by neglecting a legal matter entrusted to him. In that matter, Koenig had failed to proceed with a divorce suit until nearly one year after the client provided him with the paperwork, and did not send the divorce decree to the client or inform her that the divorce had been granted until he received a copy of her DDC complaint.

The second DDC letter of admonition, dated April 26, 2004, addressed two cases: one domestic, one immigration. With regard to the domestic matter, Koenig was sanctioned for collecting a fee without providing the client with a written retainer agreement or statement of client rights, in violation of DR 2-106(C)(2)(b) and DR 2-106(F). In the immigration matter, Koenig had failed to notify his client of the Board of Immigration Appeals' decision to deny his asylum appeal. Accordingly, Koenig was formally admonished for neglect, in violation of DR 6-101(A)(3).

On November 28, 2006, the DDC issued a third letter of admonition to Koenig. The letter addressed two domestic cases. In both cases, Koenig was sanctioned for collecting a fee without providing the client with a written retainer agreement or statement of client rights, in violation of DR 2-106(C)(2)(b) and DR 2-106(F), as well as neglect in violation of DR 6-101(A)(3) for failing to inform the client about the status of the case.

The Committee also learned that, in one of the defaulted cases listed in the Referral Order, *Frangu v. Gonzales*, No. 02-4308-ag, the petitioner had complained about Koenig's handling of her case in her motion to reinstate the petition for review and mentioned that she had filed a DDC complaint against Koenig. *Frangu v. Gonzales*, No. 02-4308-ag (Mot. to Reinstate at 2, May 25, 2006). In her DDC complaint, Ms. Frangu claimed that she did not learn that Koenig had defaulted in her case until she applied for renewal of her employment authorization and was denied on the basis that the Second Circuit case had been closed. Ms. Frangu also stated that Koenig was rude and unresponsive to her inquiries, and once "brutally threatened to have [her] deported" when she visited his office. In Koenig's response to the DDC, he stated that he believed Ms. Frangu had not been interested in pursuing her federal case, due to the cost. Koenig conceded that he may have been "annoyed" with Ms. Frangu when she visited his office, but said that he had never threatened her with deportation. The DDC ultimately decided to take no action on Ms. Frangu's complaint.

---

Departmental Disciplinary Committee to make available to the United States Court of Appeals for the Second Circuit Committee on Admissions and Grievances, all papers, records and documents pertaining to Peter S. Koenig, including material in electronic form in its possession, with the exception of work product." October 29, 2008 Order, at 2.

Koenig did not submit any information concerning the above disciplinary matters to the Committee, despite the request in the March 21, 2008 Order to Show Cause that Koenig "please provide a list and full information on any currently pending or previous disciplinary proceedings involving you by any tribunal, bar association, or other organization." March 21, 2008 Order to Show Cause, at 2. When asked why he had not provided information to the Committee concerning his previous disciplinary matters, as requested in the Order to Show Cause, Koenig stated that, because he had engaged in subsequent correspondence with the Committee, he had overlooked the items sought in the original letter. Hearing Transcript ("Tr.") at 11:14-12:7. Koenig vaguely recalled the disciplinary matter concerning Ms. Frangu, but could not answer any substantive questions regarding the nature of Ms. Frangu's complaint, his response, or the DDC's conclusion. *Id.* at 8:14-13:15. Koenig had difficulty recalling any details concerning his other disciplinary matters, and declined the opportunity to review his files and submit additional information concerning those cases. *Id.* at 8:14-13:15, 48:2-48:19.

## V.   Legal Standard

Under the Rules of this Committee,

> An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney maintains his or her principal office, or the rules of professional conduct of any other state or jurisdiction governing the attorney's conduct. An attorney may also be subject to discipline or other corrective measures for any failure to comply with a Federal Rule of Appellate Procedure, a Local Rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other conduct unbecoming a member of the bar.

Rules of the Committee on Admissions and Grievances, Rule 4.

"A court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule." Fed. R. App. P. 46(c). "Conduct unbecoming a member of the bar" may include any conduct "contrary to professional standards that show[s] an unfitness to discharge continuing obligations to clients or courts, or conduct inimical to the administration of justice." *In re Snyder*, 472 U.S. 634, 645 (1985). For "[m]ore specific guidance," we may look to "case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *Id.* at 646 n.7.

Courts have consistently treated neglect of client matters and ineffective or incompetent representation as sanctionable conduct. *See, e.g., Gadda v. Ashcroft*, 377 F.3d 934, 940 (9th Cir. 2004), *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 133 (2d Cir. 2004), *Matter of*

4

*Rabinowitz*, 596 N.Y.S.2d 398, 402 (N.Y. App. Div. 1993), *United States v. Song*, 902 F.2d 609 (7th Cir. 1990), *Matter of Kraft*, 543 N.Y.S.2d 449 (N.Y. App. Div. 1989), *In re Bithoney*, 486 F.2d 319 (1st Cir. 1973). Such conduct is also sanctionable under the applicable professional rules and standards. The American Bar Association's Standards for Imposing Lawyer Sanctions ("ABA Standards") call for a range of sanctions from reprimand to disbarment for various forms of "lack of diligence" and "lack of competence." ABA Standards §§ 4.4, 4.5. The Disciplinary Rules of New York's Lawyer's Code of Professional Responsibility require that "[a] lawyer shall not . . . [n]eglect a legal matter entrusted to the lawyer," D.R. 6-101(a)(3); in addition, the Code's Ethical Canons require that the lawyer should represent his or her client "zealously," Canon 7-1, and that he or she "be punctual in fulfilling all professional commitments," Canon 7-38.

"Any finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Rules of the Committee on Admissions and Grievances, Rule 7(h). Once misconduct has been established, in determining the sanction to be imposed, we should generally consider: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. *See* ABA Standards § 3.0. This Committee may recommend to the Court's Grievance Panel a range of sanctions, including disbarment, suspension, public or private reprimand, monetary sanction, removal from *pro bono* or Criminal Justice Act panels, referral to other disciplinary bodies, supervision by a special master, counseling or treatment, or "such other disciplinary or corrective measures as the circumstances may warrant." Rules of the Committee on Admissions and Grievances, Rule 6.

## VI.    The Alleged Misconduct

### A.    Defaults on Scheduling Orders

The evidence demonstrates that Koenig failed to comply with court scheduling orders, and failed to prosecute his clients' cases diligently. Koenig defaulted in nine of eleven petitions for review that were due between August and October 2006 by failing to file a brief on the petitioner's behalf.[2] Koenig did not seek extensions of time in any of the cases.

With regard to eight of the cases, Koenig did not submit any written explanation for the defaults. At the hearing, Koenig said that he believed that the Referral Order concerned only one case, *Duka v. Ashcroft*, No. 04-2579-ag; accordingly, he did not review his files for the other defaulted cases listed on the first page of the Referral Order or prepare any response concerning

---

[2]    The nine cases include: *Shyti v. Ashcroft*, 03-4979-ag; *Sarku v. Ashcroft*, 03-41023-ag; *Duka v. Gonzales*, 05-4777-ag; *Lesevic v. Gonzales*, 06-3540-ag, 06-3542-ag, 06-3544-ag; *Melani v. Ashcroft*, 04-2821-ag; *Kalabovic v. Ashcroft*, 05-0163-ag; *Duka v. Ashcroft*, 04-2579-ag.

5

the reasons for the defaults in those cases. Tr. 13:16-15:25. Koenig also declined the opportunity to check his files and submit a post-hearing memorandum addressing these cases.

As a general explanation for his defaults, Koenig stated that, in many cases, clients had asked him to file Second Circuit cases on their behalf, but had no intention of paying the necessary attorney's fees and costs. *Id.* at 14:2-14:14; 17:8-19:6; 24:20-25:25. According to Koenig, after initially filing the petitions, he "never heard from these people" and assumed that they had lost interest in prosecuting their appeals. *Id.* Koenig did not take steps to contact his clients to ascertain whether they intended to move forward with their Second Circuit cases, and did not consider moving to withdraw as counsel. *Id.* at 18:20-19:6; 43:21-44:18; 46:4-46:11.

Koenig did not know specifically whether any of his clients had been prejudiced by the defaults, but acknowledged that, as a general matter, defaulting on Second Circuit briefs increased the risk that a client could be deported from the United States. Tr. 42:18-43:17. Koenig did not know whether he had notified his clients when their cases were dismissed by the Court as a result of his failure to file briefs. *Id.* at 46:12-46:16. Motions to reinstate were filed in only two of the nine matters, one by a petitioner acting *pro se* and the other by a petitioner who had obtained new counsel.

The aggravating factors with regard to Koenig's multiple defaults include: (1) Koenig's prior disciplinary sanctions by the DDC for neglect of client matters; (2) Koenig's pattern of dilatory conduct; (3) Koenig's substantial experience in the practice of law; (4) the vulnerability of Koenig's immigrant clients; (5) Koenig's failure to acknowledge wrongdoing; and (6) Koenig's refusal to cooperate fully with the Committee as demonstrated by his failure to provide detailed information concerning the defaulted cases and his previous history of professional discipline. ABA Standards § 9.22(a), (c), (i), (h), (g) & (e). There are no mitigating factors.

### B.     *Duka v. Ashcroft*, No. 04-2579-ag

In *Duka v. Ashcroft*, No. 04-2579-ag, the petitioner, Mubera Duka, claimed that Koenig's failure to file a timely brief in her asylum appeal caused the Court to dismiss her case, resulting in a denial of her work authorization renewal and seizure of Ms. Duka from her home by immigration authorities. The Committee's knowledge of Koenig's representation of Ms. Duka is based upon the extensive motion for reinstatement that Ms. Duka filed with the Court, as well as Koenig's brief written response to the Committee and oral testimony.

According to Ms. Duka, on August 2, 2001, she filed an application for political asylum from Macedonia. According to Ms. Duka, Koenig "assured her that he would represent her throughout the entire process." *Duka*, No. 04-2579-ag (Mot. for Reinstatement at 2, June 25, 2007) ("*Duka* Motion"). On November 19, 2002, an Immigration Judge granted Ms. Duka's asylum application. *Id.* at 2-3. However, the Department of Homeland Security successfully appealed, and the Board of Immigration Appeals overturned the IJ ruling. *Id.* at 3. Ms. Duka then hired Koenig and paid him $850 of a $3000 fee to represent her in appealing the BIA

6

decision in the Second Circuit. *Id.* Koenig filed Ms. Duka's petition for review on May 20, 2004.

During the summer of 2006, Ms. Duka received a denial of her work authorization renewal. When she contacted Koenig, he told her that "it was denied because [her] case was in the federal court and that there was nothing he could do." *Duka* Motion, at 4. In fact, the Court had issued a scheduling order in Ms. Duka's case on October 5, 2005, and notified Koenig that petitioner's brief was due on November 4, 2005. When no brief was filed, the Court dismissed the appeal pursuant to the Court's civil appeals management plan ("CAMP") for failure to comply with the scheduling order on December 23, 2005. Koenig never notified Ms. Duka about the dismissal.

On May 24, 2007, three officers of the Immigration and Customs Enforcement Agency ("ICE") came to Ms. Duka's home, told her that that she was being deported, and brought her to the ICE office in handcuffs. Reinstatement Motion, at 5. When Ms. Duka responded that her case was on appeal, the officers informed Ms. Duka that her appeal had been denied in December 2005. *Id.* Ms. Duka was placed under an Order of Supervision with instructions to return to the ICE office by June 26, 2007 with either a return ticket to Macedonia or evidence that her Second Circuit case was being reopened. *Duka* Motion, at 5 & Exhibit 5.

Ms. Duka obtained new counsel to file a motion to reinstate her Second Circuit petition for review. *Duka* Motion, at 5. According to Ms. Duka, Mr. Koenig did not respond to inquiries by her or her new counsel requesting his assistance in preparing the reinstatement motion and seeking to understand why the brief was never filed. *Duka* Motion, at Exhibit 6 ¶¶ 5-7.

In Koenig's Response, he explained that, after filing the petition for review, he "never heard from Ms. Duka" and "did not think that Ms. Duka had the desire to continue with this appeal, nor to incur further expenses for the appeal." Response, at 1. Koenig also noted that he had never received any messages from Ms. Duka or her new counsel, since he does not have an answering service. *See id.* In sum, Koenig's written response indicated that he did not have any contact with Ms. Duka after he filed her initial petition for review.

At the hearing, Koenig said that he did not recall Ms. Duka's case, even after reviewing her file. Tr. 20:15-22:8. Accordingly, it was not clear on what basis Koenig claimed in his Response that Ms. Duka had not wished to proceed with her Second Circuit case.

While we are not making a finding that there was clear and convincing evidence that Koenig failed to proceed with Ms. Duka's case, against her wishes, we do find that Koenig did not notify Ms. Duka when her case was dismissed by the Court. As a result, she was unaware that she was at risk of being seized and possibly deported by immigration authorities. This act constitutes neglect in violation of DR 6-101(A)(3). *See also* New York Model Rules of Professional Conduct (approved Dec. 16, 2008; to take effect on April 1, 2009), Rule 1.4(a) ("A lawyer shall (1) promptly inform the client of: (iii) material developments in the matter . . . (3)

7

keep the client reasonably informed about the status of the matter," and "(4) promptly comply with a client's reasonable requests for information.").

The aggravating factors include: (1) Koenig's prior disciplinary sanctions by the DDC for neglect of client matters; (2) Koenig's substantial experience in the practice of law; (3) the vulnerability of Ms. Duka; (4) Koenig's failure to acknowledge wrongdoing; and (5) Koenig's failure to provide detailed information concerning his representation of Ms. Duka. ABA Standards § 9.22(a), (i), (h), (g) & (e). The sole mitigating factor is absence of a dishonest or selfish motive. ABA Standards § 9.32.

## C. Practice Before the Court Without Admission

Koenig has represented at least eleven petitioners before the Court, but has never sought admission to the Second Circuit bar. According to Koenig, he believed that his admission to the Southern District of New York also permitted him to practice before the Second Circuit. Response, at 1; Tr. 23:13-24:4. He did not believe that there was any distinction between the admission requirements for the District Court and the Court of Appeals. *Id.* This conduct is plainly in violation of Local Rule 46(d), which provides that "[c]ounsel of record for all parties must be admitted to practice before this court." *See also* Fed. R. App. P. 46 (setting forth admission requirements for practice before federal courts of appeals).

Aggravating factors include: (1) Koenig's substantial experience in the practice of law; (2) the vulnerability of his immigrant clients; and (3) Koenig's failure to acknowledge wrongdoing. ABA Standards § 9.22(i), (h), (g). Mitigating factors include lack of a prior disciplinary record and lack of a dishonest or selfish motive concerning this conduct. ABA Standards § 9.32(a) & (b).

## VII. Recommendation

The Committee finds, based on clear and convincing evidence, that Koenig's conduct before the Court clearly warrants discipline. The record shows that Koenig neglected nine cases before the Court; failed to notify at least one client that her case had been dismissed, causing her to be subjected to seizure by immigration authorities; and repeatedly appeared as counsel of record in Second Circuit cases without ever having been admitted to practice before the Court. In those cases where Koenig defaulted, he repeatedly failed to withdraw formally from or stipulate to the dismissal of cases which he had abandoned, ultimately burdening the Court with additional work and violating the Court's scheduling orders. In addition, he has been previously sanctioned on multiple occasions by the DDC, and was thus on notice that neglect of client matters violates DR 6-101(A)(3).

Koenig has conceded that he has not been diligent either in prosecuting cases or withdrawing from representations. He stated that he no longer practices before the Court and will cease to do so in the future. Koenig is not listed as counsel of record in any pending cases.

8

Under Committee Rule 6, this Committee has the authority "to recommend to the Grievance Panel, after the attorney who is the subject of the referral has received proper notice of any charges and an opportunity to be heard, that the attorney be . . . (b) if not a member of the bar of the Court, precluded from becoming a member or from appearing in future cases in the Court." Given the gravity of Koenig's conduct before the Court, as well as his history of disciplinary sanctions for neglect of client matters, the Committee recommends that Koenig be precluded from admission to the Second Circuit bar and from the practice of law before this Court in any future cases.