08-9044-am
In re Gregory Cooper

# United States Court of Appeals
FOR THE
SECOND CIRCUIT

———————————

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 22nd day of February two thousand ten,

Present:

> José A. Cabranes,
> Robert D. Sack,
> Richard C. Wesley,
> > *Circuit Judges.*



UNITED STATES COURT OF APPEALS
FILED
FEB 22 2010
Catherine O'Hagan Wolfe, CLERK
SECOND CIRCUIT

---

In re Gregory Cooper,

> Attorney.

08-9044-am

**ORDER OF
GRIEVANCE PANEL**

---

By order filed in April 2008, this panel referred Gregory Cooper to this Court's Committee on Admissions and Grievances ("the Committee") for investigation of the matters described in that order and preparation of a report on whether he should be subject to disciplinary or other corrective measures.

Prior to holding a hearing on this matter, the Committee, in May and June 2008, served Cooper with two orders to show cause why he should not be subject to disciplinary or other corrective measures. Although Cooper later acknowledged receipt of both orders, he failed to respond to either. Cooper's first communication with the Committee was in response to an August 2008 letter informing him of the hearing date. However, his communication did not address any of the matters discussed in this panel's April 2008 order or the Committee's two orders. Instead, Cooper requested postponement of the hearing, which the Committee denied. At the hearing, held in September 2008, Cooper presented sworn testimony in response to the Committee's questions and had the opportunity to address the matters

discussed in this panel's April 2008 order. Presiding over the hearing were Committee members Evan A. Davis, Esq., Deirdre M. Daly, Esq., and David B. Fein, Esq. Cooper represented himself during the Committee's proceedings. In February 2009, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations. Thereafter, the Court provided Cooper with a copy of the Committee's report, and Cooper responded.

In its report, the Committee concluded that there was clear and convincing evidence that Cooper had engaged in conduct warranting the imposition of discipline. *See* Report at 7. After noting the presence of various aggravating and mitigating factors, *id.* at 7-9, the Committee recommended that Cooper be publicly reprimanded, barred from representing clients in this Court in his capacity as a Criminal Justice Act ("CJA") panelist for a two-year period, and subject to certain reporting requirements, *id.* at 9-10. In his response to the Committee's report, Cooper expressed his remorse, clarified certain matters, and requested that he be placed on probation rather than subject to the disciplinary measures recommended by the Committee. *See* Response at 1-3.

Upon due consideration of the Committee's report, the underlying record, and Cooper's submissions, it is hereby ORDERED that the Committee's findings and recommendations are adopted by the Court, and Cooper is PUBLICLY REPRIMANDED for the misconduct described in the Committee's report, BARRED from representing clients in this Court pursuant to the CJA for a two-year period commencing with the filing date of this order, and directed to comply with the reporting requirements listed on page 10 of the Committee's report.[1] We reject the alternative disciplinary measure suggested by Cooper since it would constitute inadequate discipline for his past misconduct and offers insufficient assurance of appropriate future conduct in this Court. Furthermore, although we acknowledge Cooper's assertion that his trial work is qualitatively different than the appellate work addressed by the Committee's report and this order, that possibility does not alter the present decision.

However, Cooper may continue any current CJA representation in any appeal now pending in this Court. Additionally, the present order does not bar Cooper from CJA representation of clients in the district courts and should not be perceived as requiring, or favoring, any particular reciprocal discipline by the district courts.

The text of this panel's April 2008 order and the Committee's report are appended to, and deemed part of, the present order for the following disclosure purposes. Cooper must disclose this order to all clients in cases currently pending in this Court and to all courts and bars of which he is currently a member, and as required by any bar or court rule or order. Furthermore, the Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members

---

[1] Cooper is not a member of this Court's CJA Panel, but has been continued as CJA counsel in this Court after having been appointed as CJA counsel by the district court. The two-year bar on CJA representation in this Court applies regardless of the court making the CJA appointment. If Cooper is mistakenly continued as CJA counsel in a future case in this Court during that period, he must promptly notify this Court of the need for substitution.

2

of the public in the same manner as all other unpublished decisions of this Court, and to serve a copy on Cooper, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee for the New York State Appellate Division, First Department, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By: _____

Michael Zachary
Supervisory Staff Attorney
Counsel to the Grievance Panel

## APPENDIX 1

### Text of April 2008 order

For the reasons that follow, Gregory Cooper is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether he should be subject to disciplinary or other corrective measures. *See* Second Circuit Local Rule 46(h). We express no opinion here as to an appropriate disposition. The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

Cooper was referred to this panel as a result of the proceedings in *United States v. Jorge*, 06-3009-cr, an appeal taken by Cooper's client from a criminal judgment. In February 2007, the appeal was dismissed due to Cooper's failure to file a brief. *See Jorge*, 06-3009-cr, order filed Feb. 22, 2007. At that time, Cooper was reminded of his obligation to continue representing his client through appeal unless relieved by the Court, and directed to file, within twenty days, a motion to reinstate accompanied by either an appellate brief or a properly executed stipulation withdrawing the appeal. *Id.*, letter-order filed Feb. 22, 2007. There is no indication that Cooper complied with any of the Court's instructions, or requested an extension of time to do so. *Id.*, order filed Apr. 25, 2007 (noting Cooper's failure to comply with February 2007 order). This Court subsequently reinstated the appeal, *sua sponte*, relieved Cooper as counsel, and appointed new counsel. *Id.* Thereafter, we are informed, both the appellant's new counsel, Katherine Alfieri, and the Clerk's Office were unsuccessful in their efforts to obtain records from Cooper. Although Cooper contended that he had sent the records to Alfieri and would send another set, Alfieri informed the Court that the records were not received and Cooper failed to return subsequent telephone calls. *Id.*, motions filed June 18, 2007, July 26, 2007, Aug. 31, 2007, and docket clerk entry for Aug. 24, 2007 (noting docket clerk's conversation with Cooper). Alfieri's last

3

request for an extension of time was denied, with the court noting that "[d]ifficulties in obtaining the trial files from previous attorneys are not cured by extension of time motions to file briefs." *Id.*, order filed Oct.1, 2007. Alfieri then filed her brief, apparently without having received the requested records from Cooper. *See id.*, motion filed Oct.1, 2007 (requesting leave to file supplemental brief if files are received from Cooper).

Additionally, Cooper has defaulted in other cases, resulting in the dismissal of at least two of them. Although one of the dismissed cases was later reinstated and eventually decided on the merits, *see United States v. Karro*, No. 00-1565-cr, the other dismissed case remained closed despite Cooper having been instructed to seek reinstatement, *see United States v. Sosa (Tineo)*, No. 03-1617-cr, entry at Apr. 30, 2004. Similarly, in *United States v. Bolanos-Rodriguez*, No. 07-0989-cr, Cooper failed to respond to the government's motion to dismiss the appeal, although ordered to do so by July 9, 2007. *See Bolanos-Rodriguez*, No. 07-0989-cr, order filed June 7, 2007. A subsequent letter from Cooper's client to the Court indicates both that he remains interested in pursuing the appeal and that he has not been kept abreast of the appeal's status. *See id.*, letter filed Sept. 20, 2007. Lastly, in *United States v. Rivera (Pedro)*, No. 04-2999-cr, Cooper defaulted on the briefing schedule at least three times, filing a late motion for an extension on each occasion, before finally filing the brief.

Upon due consideration of the matters described above, it is ORDERED that Gregory Cooper is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report, pursuant to Federal Rule of Appellate Procedure 46, this Court's Local Rule 46(h), and the Rules of the Committee on Admissions and Grievances.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____/s/_____

Michael Zachary
Supervisory Staff Attorney
Counsel to the Grievance Panel

4

**February 2009 Report of the Committee
on Admissions and Grievances**

**In re Gregory Cooper (08-9044-am)**

## I. Introduction

By Order dated April 22, 2008 (the "Referral Order"), the United States Court of Appeals for the Second Circuit (the "Court") referred Gregory Cooper to this Committee for investigation of his conduct before the Court and preparation of a report on whether he should be subject to disciplinary or other corrective measures.

The Referral Order states that Cooper has defaulted on the briefing schedules in at least four cases before the Court. Cooper has conceded that he "basically ignored these deadlines and didn't follow through on them," Tr. 32:22-24, and he has not disputed that his failure timely to file briefs has resulted in dismissal of some of his clients' appeals. In view of a number of instances of allowing deadlines to pass without arranging for an extension, and in light of the aggravating and mitigating circumstances discussed below, the Committee concludes Cooper's neglect and lack of diligence in these matters is of sufficient magnitude to justify a sanction.

The Committee recommends that Cooper be publicly reprimanded for his conduct. With respect to Cooper's service as a Criminal Justice Act ("CJA") panelist, the Committee recommends that Cooper be prohibited, for a period of two years, from representing clients in his capacity as a CJA panelist before the Second Circuit. As further described below, the Committee also recommends that Cooper be required to submit a copy of the public reprimand to the Chairperson of the Committee on Defender Services of the Board of Judges for the Southern District of New York and the Chief Judge of the Eastern District of New York. As further described below, the Committee also recommends that Cooper be required, in connection with his practice in any federal court in the Second Circuit or in any federal administrative agency whose action is subject to the Second Circuit's review, to submit to the Committee sworn statements identifying under oath each and every instance during each of four reporting periods

described below in which (1) a submission is not filed or filed out of time; or (2) an application is made for permission to make a late filing only after the due date has passed. The following constitutes the Committee's report and recommendation to impose discipline on Cooper.

## II. The Disciplinary Proceeding

On May 6, 2008, the Committee sent a Notice of Referral and Proceeding to Cooper (the "First Notice"). The First Notice ordered, *inter alia*, Cooper to show cause why the Committee should not recommend disciplinary and/or other corrective action in connection with the matters noted in the Referral Order. The First Notice directed that Cooper provide his response to the Committee within 30 days and it identified the information that Cooper was required to include in the response pursuant to Committee Rule 7(c). Cooper did not respond within this 30-day period.

On June 20, 2008, Committee sent a Second Notice of Referral and Proceeding to Cooper (the "Second Notice"). The Second Notice advised Cooper that the Committee had not received any response to the First Notice and informed him that the Committee would proceed without the benefit of a response if he failed to respond by June 30, 2008. The Second Notice also noted that "failure to respond to the inquiries of this Committee may constitute an independent basis of professional misconduct subjecting you to disciplinary action." Cooper did not respond to the Second Notice.

On August 15, 2008, the Committee advised Cooper that a hearing in this matter was scheduled for September 9, 2008. On August 21, 2008, Cooper sent a letter to the Secretary of the Committee requesting that the hearing be adjourned in light of: (1) his scheduled vacation for August 23, 2008, through Labor Day (September 1, 2008); and (2) the fact that "people [he has] discussed this matter with are presently away." The Committee denied Cooper's request, noting that Cooper had not explained why the week after his vacation would be insufficient time to prepare for the hearing, particularly in light of the three months that had passed since the First Notice. The Committee also noted that Cooper had provided no detail that would justify adjournment with respect to the "people" with whom he had discussed this matter. In particular, Cooper did not state that they would be unavailable after his return from vacation or that they would be unavailable to attend the hearing.

On September 9, 2008, Evan A. Davis, Deirdre M. Daly and David B. Fein met with Cooper for the purpose of conducting the hearing. Andrew B. Dean, assistant to the Committee, was also present. Cooper was permitted to make a post-hearing submission to the Committee, and he submitted a letter on October 3, 2008.

## III. Background

The following facts are taken from court records, Cooper's testimony and his post-hearing letter.

Cooper was admitted to the bar of the State of New York in January 1971 and later admitted to the bars of the Southern District of New York and the Eastern District of New York. He stated that he does not recall being separately admitted to the bar of the U.S. Court of

2

Appeals for the Second Circuit, but said that he is admitted to the bar of this Court "as through [his] membership on the CJA Panel."[1] Tr. 35:12-13.

Throughout his career, Cooper has practiced exclusively in the area of criminal law. He has essentially no experience in civil matters. He practices primarily in trial courts, and said that he does not consider himself an appellate attorney. Tr. 30:22-23. He said that he has handled about one state appeal and otherwise has only done appellate work before the Second Circuit on appeals of matters he has handled as a CJA panelist in the trial courts. Tr. 31:2-5. Cooper joined the Legal Aid Society ("LAS") as a staff attorney on August 26, 1970. This was the first job he held after graduating from law school. He remained with the LAS until December 1986, except for his period of military service between November 1971 and January 1973. He entered private practice in January 1987 and has operated as a solo practitioner since then. Tr. 28:2-8.

Since operating his solo practice in 1987, Cooper has never been associated with another firm. He does not have a secretary. He said that in his current office he has access to paralegals and others who can assist with brief writing and motions. However, he said that prior to this matter before the Committee, he rarely if ever sought such assistance with briefs or motions. Tr. 34:6-7. He said that he handles matters on his own, without assistance, for financial reasons and because he is "just not good at delegating responsibility to others." Tr. 28:17-22.

He said that his current caseload consists of about ten CJA cases, all in either the Eastern District or the Southern District. In addition to his CJA cases, he said that he has one case in the Southern District, one case in the Eastern District, and between five and ten cases in state court. Tr. 75:23-25, 76:16. He said that he has no state appellate matters on his docket. When asked at the hearing whether he had matters on appeal to the Court, he said that there were "[n]one that I . . . can think of that I am aware of," Tr. 35:6-7, although he said that he had earlier in the day received a letter from the Court and "it would not surprise [him]" if it related to one of the matters that was the subject of the Referral Order. Tr. 76:6-7.

## IV.    The Legal Standard

Under the Rules of this Committee,

> "An attorney may be subject to discipline or other corrective
> measures for any act or omission that violates the rules of
> professional conduct or responsibility of the state or other
> jurisdiction where the attorney maintains his or her principal
> office, or the rules of professional conduct of any other state or
> jurisdiction governing the attorney's conduct. An attorney may
> also be subject to discipline or other corrective measures for any
> failure to comply with a Federal Rule of Appellate Procedure, a
> Local Rule of the Court, an order or other instruction of the Court,
> or a rule of professional conduct or responsibility of the Court, or
> any other conduct unbecoming a member of the bar."

---

[1]    Section VIII, paragraph A of this Court's Amended Plan to Implement the Criminal Justice Act of 1964 states: "Counsel appointed under the Act to represent a CJA client in the district court shall continue such representation on appeal unless or until relieved by order of the Court of Appeals."

3

Rules of the Committee on Admissions and Grievances, Rule 4.

"A court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule." Fed. R. App. P. 46(c). "Conduct unbecoming a member of the bar" may include any conduct "contrary to professional standards that show[s] an unfitness to discharge continuing obligations to clients or courts, or conduct inimical to the administration of justice." In re Snyder, 472 U.S. 634, 645 (1985). For "[m]ore specific guidance," the Court may look to "case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." Id. at 646 n.7.

Courts have consistently treated neglect of client matters and ineffective or incompetent representation as sanctionable conduct. See, e.g., Gadda v. Ashcroft, 377 F.3d 934, 940 (9th Cir. 2004); Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 133 (2d Cir. 2004); Matter of Rabinowitz, 596 N.Y.S.2d 398, 402 (N.Y. App. Div. 1993); United States v. Song, 902 F.2d 609 (7th Cir. 1990); Matter of Kraft, 543 N.Y.S.2d 449 (N.Y. App. Div. 1989); In re Bithoney, 486 F.2d 319 (1st Cir. 1973). Such conduct is also sanctionable under the applicable professional rules and standards. The American Bar Association's Standards for Imposing Lawyer Sanctions call for a range of sanctions from reprimand to disbarment for various forms of "lack of diligence" and "lack of competence." ABA Standards §§ 4.4, 4.5. The Disciplinary Rules of New York's Lawyer's Code of Professional Responsibility require that "[a] lawyer shall not . . . [n]eglect a legal matter entrusted to the lawyer," D.R. 6-101(A)(3); in addition, the Code's Ethical Canons require that the lawyer should represent his or her client "zealously," Canon 7-1, and that he or she "be punctual in fulfilling all professional commitments," Canon 7-38.

"Any finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Rules of the Committee on Admissions and Grievances, Rule 7(h). Once misconduct has been established, in determining the sanction to be imposed, the Committee should generally consider: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. See ABA Standards § 3.0. This Committee may recommend to the Court's Grievance Panel a range of sanctions, including disbarment, suspension, public or private reprimand, monetary sanction, removal from pro bono or Criminal Justice Act panels, referral to other disciplinary bodies, supervision by a special master, counseling or treatment, or "such other disciplinary or corrective measures as the circumstances may warrant." Rules of the Committee on Admissions and Grievances, Rule 6.

## V.    Alleged Misconduct

### A.    United States v. Jorge

In July 2006, Cooper filed a notice of appeal on behalf of his client, Luis Jorge. On August 24, 2006, the Court entered a scheduling order in the case; notice of the scheduling order was sent to counsel on the same day. The scheduling order required the appellant to file (a) the record on appeal on or before September 13, 2006, and (b) the appellant's brief on or before October 13, 2006. During the hearing before the Committee, Cooper conceded that he did not file the record on appeal or the appellant's brief within these deadlines. Tr. 44:10-11. Nor did

4

he seek an extension of time or attempt to withdraw the appeal in the manner required by the Court's rules.

On February 22, 2007, the Court dismissed Jorge's appeal based on Cooper's failure to comply with the scheduling order. On the same day, the Court, though a letter from the Acting Clerk, directed Cooper to submit a brief, appendix and motion to reinstate the appeal within 20 days.[2] The Court's docket indicates that Cooper did not comply with this order and, in fact, filed no papers on behalf of his client. On April 25, 2007, the Court, *sua sponte*, reinstated Jorge's appeal and directed that CJA counsel be assigned to represent Jorge. On May 8, 2007, Cooper was relieved as counsel and Katherine Alfieri was assigned to represent Jorge. On the same day, the Court issued a second scheduling order setting deadlines for the filing of the appellant's papers.

Alfieri subsequently sought several extensions of time to file the appellant's papers in support of the appeal. In affidavits Alfieri filed with the Court in support of each of these requests, she advised the Court that she had attempted, without success, to obtain the trial file from Cooper. .

During the hearing before the Committee, Cooper said that he had, in fact, sent the file to Alfieri. He said that he sent it by regular mail and did not retain a record of the shipment, Tr. 40:19, or a duplicate set of the documents. Tr. 49:15. Cooper testified that he had not obtained certain papers such as sentencing minutes, that these papers could be obtained elsewhere and that it was now Alfieri's job to do that.

The Referral Order also states that when the Clerk's Office asked Cooper about the transmission of documents to Alfieri, he responded that he had sent the file to Alfieri and that he would send Alfieri a duplicate copy. During the hearing, Cooper disputed this account of his conversation with the Clerk's Office. He said that he would not have agreed to provide a duplicate copy because he did not retain such a copy. Instead, he recalled informing the Clerk's Office that he "would look and see if [he] had another copy to send her." Tr. 48:10-11. Upon investigation, he concluded that he did not have another copy. Tr. 48:16-18.

## B. United States v. Karro

In August 2000, Cooper filed a notice of appeal on behalf of his client, Kati Karro. On August 22, 2000, the Court entered a scheduling order directing Cooper to file (a) the record on appeal on or before September 11, 2000, and (b) the appellant's brief on or before October 11, 2000. Cooper conceded that he did not file the record or the brief within the time set forth in the scheduling order. Tr. 55:18-19. On November, 3, 2000, Karro's appeal was dismissed for failure to comply with the scheduling order. Under a separate docket entry of the same day, the appeal was reinstated. On November 7, 2000, Cooper filed a motion to extend the time to file his appellate brief; that motion was granted on November 9, 2000.

---

[2] During the hearing before the Committee, Cooper did not specifically recall seeing the Court's February 22 order dismissing the appeal or the February 22 letter from the Acting Clerk. He did not however, contend that he did not receive these documents. Instead, he said that "there are a number of matters that [he] just didn't pay attention to that [he] should have. . . . it could be that it came, [he] just didn't review it or pay attention to it." Tr. 50:12-21.

During the hearing before the Committee, Cooper did not have a clear recollection of this chronology. He conceded that the scheduling order was not complied with, Tr. 58:3-4, but he did not recall receiving notice that the appeal had been dismissed and subsequently reinstated. Tr. 59:12-13. He did, however, remember filing a motion to extend the time to file the appellate brief, and he did not contest the docket entries showing this motion having been made after the deadline set forth in the scheduling order had passed. Tr. 58:11-14.

Cooper subsequently filed the record and brief and the Court decided Karro's appeal on its merits.

### C.    United States v. Sosa (Tineo)

In October 2003, Cooper filed a notice of appeal on behalf of his client, Jose Tineo. On October 21, 2003, the Court entered a scheduling order directing that Cooper file (a) the record on appeal on or before November 10, 2003, and (b) the appellant's brief on or before December 10, 2003. Cooper did not contest that he failed to file the record or the brief within the time set forth in the scheduling order. Tr. 59:21-25. On April 30, 2004, Tineo's appeal was dismissed for failure to comply with the scheduling order.[3] On the same date, the Court advised Cooper to file a motion to reinstate the appeal, along with the appellant's brief. Cooper never made the motion to reinstate the appeal and never attempted to perfect the appeal. Accordingly, the appeal was never reinstated or considered by the Court on its merits.

### D.    United States v. Bolanos-Rodriguez

In March 2007, Cooper filed a notice of appeal on behalf of his client, Juan Bolanos-Rodriguez. On March 28, 2007, the Court entered a scheduling order directing that Cooper file (a) the record on appeal on or before April 17, 2007, and (b) the appellant's brief on or before May 17, 2007. The Court's docket does not indicate that Cooper filed any of the papers required under the scheduling order. On May 29, 2007, the government filed a motion to dismiss the appeal on the ground that the defendant had entered into an agreement to waive his appellate rights. The Court ordered Cooper to respond to the motion to dismiss within 30 days. Cooper conceded that he did not comply with this deadline and, in fact, never responded to the government's motion. Tr. 66:14. He said that he believed that he failed to respond to the government's motion because he had failed to "pay attention to it." Tr. 63:25, 66:14. The Court's non-public docket also indicates that the Clerk's Office called Cooper on April 8, 2008, to discuss the pending motion to dismiss, and Cooper said that he did not realize that there was a pending motion. Cooper did not dispute this account, but said that "I may very well have. I don't recall. It is all a part of things that I didn't do." Tr. 67:9-11.[4]

In Cooper's post-hearing letter, he advised the Committee that he had received a call from the Court Clerk regarding the status of the appeal on behalf of Bolanos-Rodriguez. Cooper

---

[3]    The Court's non-public docket also indicates that the Clerk's Office had several communications with Cooper prior to the April 30, 2004, Order dismissing the appeal. Apparently, Cooper advised the Clerk's Office that he was planning to file a motion to extend time.

[4]    The Referral Order also mentions that Bolanos-Rodriguez sent a letter to the Court in September 2007 advising the Court that he remained interested in pursuing the appeal and had not been kept abreast of the appeal's status.

6

advised the Committee in the letter that he had, on October 3, 2008, filed a motion to be relieved as Bolanos-Rodriguez's counsel and to have new counsel appointed. Cooper acknowledged that he "clearly should not have allowed matters to delay to this stage."

### E.  United States v. Rivera (Pedro)

In May 2004, Cooper filed a notice of appeal on behalf of his client, Martin Pedro. On June 15, 2004, the Court entered a scheduling order directing Cooper to file (a) the record on appeal on or before July 6, 2004, and (b) the appellant's brief on or before August 5, 2004. On September 1, 2004, almost one month after the appellant's brief was due, Cooper filed a motion to extend time to perfect the appeal. The Court granted the motion and extended the deadline for the appellant's brief to October 4, 2004. Cooper did not file the brief within this time; he filed a second motion to extend the deadline on October 7, 2004 (three days after the brief was due), which the Court subsequently granted and extended the deadline for the appellant's brief to November 3, 2004. Cooper did not file the brief within this time. Almost five months later, Cooper filed, on March 30, 2005, a third motion to extend the deadline. On May 5, 2005, the Court denied the motion and granted a five-day grace period for the brief to be filed. Cooper filed the brief on May 9, 2005.

With respect to this case, Cooper did not dispute that he had "defaulted on the briefing schedule at least three times, filing a late motion for an extension on each occasion." Tr. 68:10-11 (quoting Referral Order). In response to an inquiry about whether he agreed that motions for extensions should be filed before the due date, he said, "Anything that I did was done in a manner that was probably inappropriate in response to what happened. It's part of my not being an appellate lawyer, not dealing with things properly, not paying any attention to it that I should." Tr. 69:11-16.

## VI.  Disciplinary Action Is Warranted

Based on clear and convincing evidence, the Committee finds that disciplinary action is warranted in this case based on "conduct unbecoming a member of the bar." Fed. R. App. P. 46(c). Specifically, Cooper has engaged in "conduct inimical to the administration of justice," In re Snyder, 472 U.S. 634, 645 (1985), and neglected a matter entrusted to a lawyer, DR-6-101(A)(3), by failing to timely submit papers, or timely request an extension of time, in several cases. In United States v. Jorge, Cooper without justification violated a scheduling order and an order to apply for reinstatement. As a result of his neglect, new counsel had to be appointed. While Cooper disputes that he failed to furnish new counsel with needed papers, accepting the truth of his testimony does not mitigate his conduct giving rise to delay prejudicial to his client. Of even greater concern is Cooper's failure to submit papers in United States v. Sosa (Tineo), along with his failure to comply with the Court's instruction that he proceed with the appeal, which resulted in the case having never been considered by the Court on its merits. In the three other cases discussed above, Cooper violated scheduling orders and filing deadlines, in one case multiple times. The Committee notes that there is no dispute over any fact that serves as a basis for disciplinary action.

There are both aggravating and mitigating circumstances here. See ABA Standards §§ 9.22; 932.

7

A pattern of failing to meet deadlines or failing to apply for an extension before the deadline has passed would be an aggravating circumstance, and an isolated instance would be a mitigating circumstance. ABA Standard § 9.22(c) ("a pattern of misconduct"); 9.22(d) ("multiple offenses"). The facts here fall strongly on the side of aggravation. In the Court's Referral Order, several instances are cited where Cooper failed to file an appellate brief. Although Cooper failed to file timely briefs in all of these cases, he only sought the Court's permission to extend his deadlines in two of the cases. Even these requests were untimely. In *Karro*, Cooper filed a motion to extend deadlines only after the case had been dismissed by the Court for failure to comply with the scheduling order. In *Rivera (Pedro)*, Cooper made three separate requests for extensions, each of them untimely and the last of them almost five months after the due date.

In answering questions about these missed deadlines when examined by Committee members, Cooper several times acknowledged that he "ignored" deadlines in these cases. Tr. 32:22-24 ("I basically ignored these deadlines and didn't follow through on them."); 51:13-15 ("It was all part of my ignoring what needed to be done on appellate matters. I don't deny that.").

The Committee is also concerned that Cooper has not been attentive in his dealings with the Committee. Cooper failed to respond to the First Notice, dated May 6, 2008, or the Second Notice, dated June 20, 2008. He admitted that he received the notices and failed to respond to them. He said that he received the First Notice while he was on trial, but he ultimately did not respond to the notices because he was embarrassed and hoped that it would go away. Tr. 20:3, 20:10. He said that he had not observed that the notices were framed as orders to show cause and required him to provide a response because he "didn't even pay attention to it" and "basically ignored it." Tr. 20:18, 21. Cooper's first acknowledgment that he had received the Committee's correspondence came when he requested an adjournment of the hearing in light of his scheduled vacation – notwithstanding that the hearing was scheduled one week after he was scheduled to end his vacation.

Failure to respond to the Committee could constitute an independent basis for disciplinary action. However, the Committee does not recommend separate or independent discipline on this ground. Instead, the Committee has considered Cooper's lack of attentiveness towards these disciplinary proceedings to be an aggravating factor with respect to the underlying matters described in the Referral Order. Moreover, the Committee notes that Cooper's lack of attentiveness towards this disciplinary proceeding is consistent with the lack of attentiveness to the cases that caused the Court to refer Cooper to the Committee in the first place.

The final aggravating factor is the vulnerability of the victims of Cooper's inattentiveness – namely, criminal defendants who are either imprisoned or facing criminal punishment and relying on Cooper's professional skills. ABA Standard § 9.22(h).

Mitigating factors include (1) the absence of a prior disciplinary record; (2) character or reputation; and (3) remorse. With respect to mitigating factor (1), Cooper states that he has not been subject to any previous discipline. He said that he has received grievance letters, but he responded to them and they never proceeded further. Tr. 70:8-11. With respect to factor (2), Cooper did not present any character witnesses, but he stated that many colleagues and judges

would, if asked by the Committee, vouch for his character. The Committee also notes in this regard that Cooper has been a longstanding CJA panelist in the Southern and Eastern Districts. With respect to factor (3), Cooper acknowledged that "people here should have been able to trust what I said and I let them down" with respect to the appellate proceedings. Tr. 96:16-18. He also said that "These people on appeal had the right to expect certain things and they didn't get it." Tr. 96:23-25. This remorse, however, is somewhat undercut by Cooper's impatience with the explorations at the hearing of his repeated ignoring of scheduling orders.

Additionally, Cooper advised the Committee that he had made arrangements for another attorney to handle his active appeals. Tr. 78:7-9. He said that he would advise, coordinate and help oversee compliance with court deadlines, but the appellate attorney would be responsible for the briefing and argument. Tr. 78:10-23. In his post-hearing submission, Cooper identified the attorney who would assist with his appellate matters. The Committee has considered Cooper's reactive step to a pattern of inattention to appellate matters and credits his good faith in proposing this arrangement. Unfortunately, this good faith is tempered by the fact that Cooper has taken steps to prevent further incidents only after having been referred to the Committee based on incidents that have spanned more than eight years.

Finally, the Committee notes that Cooper explained that he was distracted over some of the time period relevant to this proceeding because he was required to participate in *Curcio* hearings in all of his cases in the Southern and Eastern Districts between September or October 2006 and May 2007. Tr. 7:6-11. In these hearings, his clients were advised that he was the subject of a governmental investigation and asked whether they felt that Cooper had a conflict of interest in representing them based on the ongoing investigation.[5] Tr. 7:13-17. Cooper also told the Committee that the investigation was causing stress in his personal life. Tr. 45:9-11. Ultimately, Cooper acknowledged, and the Committee agrees, that the investigation does not excuse his lack of diligence. Tr. 11:24 – 12:2. Further, the Committee notes that Cooper has missed deadlines before the investigation began, while it was ongoing, and after it concluded.

## VII.   Recommendation

A single instance of conduct inimical to the administration of justice or neglect of a matter entrusted to an attorney might not justify any sanction, but here there are a number of instances of misconduct and neglect. The aggravating factors are significant. Cooper does not have a significant practice before the Second Circuit, but he does have a high incidence of late filings before the court. Further, in one case, as a result of Cooper's failure to file an appeal, the matter was never considered by the Court on its merits.

Accordingly, Cooper should be publicly reprimanded for his failures as set forth herein. (A draft form of reprimand is attached). The matters cited in the Referral Order are matters in which Cooper was representing his clients on CJA referral and he has not pursued these matters with the level of diligence demanded by professional standards. Accordingly, the Committee recommends that Cooper be prohibited, for a period of two years, from representing clients

---

[5]      Cooper advised the Committee that he was the subject of an investigation for mail fraud. The particulars of the investigation are not germane to this disciplinary proceeding but appear relate to matters involving Cooper's Mitchell Lama housing. Cooper told the Committee that the United States Attorney's Office advised him in May 2007 that they would not be proceeding further with the investigation. Tr. 91:9-11.

9

before the Second Circuit in his capacity as a CJA panelist. With respect to Cooper's membership on the CJA panels in the Southern District of New York and Eastern District of New York, the Committee recommends that Cooper be required to submit a copy of the public reprimand to the Chairperson of the Committee on Defender Services of the Board of Judges for the Southern District of New York and the Chief Judge of the Eastern District of New York. Along with the copies of the reprimand letter, Cooper should advise these recipients, in writing, that the Second Circuit, upon the Committee's recommendation, has required that the reprimand letter be submitted for the purpose of considering Cooper's continued membership as a CJA panelist. These submissions shall be made not more than ten (10) days after Cooper's receipt of the reprimand letter, with copies and proof of delivery provided to the Committee Secretary not more than five (5) days thereafter (in any event no more than fifteen (15) days after Cooper's receipt of the reprimand letter).

In addition, he should be required, in connection with his practice in any federal court in the Second Circuit or in any federal administrative agency whose action is subject to the Second Circuit's review, to submit to the Committee sworn statements identifying under oath each and every instance during each of the four reporting periods described below in which (1) a submission is not filed or filed out of time; or (2) an application is made for permission to make a late filing only after the due date has passed. It is expected that these reports will show no such instances absent exigent circumstance, which circumstances should be attested to under oath in the respective report.

In the event that a report is not timely filed or reveals deficiencies not justified by exigent circumstance, the Committee may recommend the imposition of additional discipline, including but not limited to suspension from the Second Circuit, without hearing further testimony.

The following reporting periods and deadlines shall be observed. The report for each reporting period shall be mailed to the Committee Secretary within ten (10) days of the end of that reporting period. The first reporting period shall commence 10 days after the Committee's recommendation is mailed to Cooper and shall end six months after the Second Circuit issues its order of disposition in this matter. Each of the three subsequent reporting period shall be for a reporting period commencing at the end of the prior reporting and ending six months later. A total of four reports will be prepared and mailed to the Committee Secretary.